**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHELLE RAY, individually and** | § | |
| **derivatively on behalf of** | § | |
| **ABSOLUTE FACILITY** | § | |
| **SOLUTIONS, LLC,** | § | |
| Plaintiff | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:21-cv-00020-LY** |
| | § | |
| **PATRICK LYNASS,** | § | **JURY TRIAL DEMANDED** |
| **INDIVIDUALLY AND D/B/A,** | § | |
| **PACESETTERS,** | § | |
| Defendant. | § | |

---

**DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND**
**COUNTERCLAIMS**

---

Comes now, Defendant PATRICK LYNASS, INDIVIDUALLY AND D/B/A,

PACESETTERS ("Lynass" or "Defendant"), and files this, his Original Answer, Affirmative

Defenses, and Counterclaims to Plaintiffs MICHELLE RAY's ("Ray" or "Plaintiff") and

ABSOLUTE FACILITY SOLUTIONS, LLC's ("AFS" or "Plaintiff") First Amended Complaint,

and in support respectfully shows as follows:

**I.**

**DEFENDANT'S ORIGINAL ANSWER**

1.    Defendant denies all of the allegations contained in Paragraph 1 of the Plaintiffs' First

Amended Complaint except for the following:

    a.    Defendant admits that he is "a California citizen, is the former Director of Sales for

        and a current member of" Plaintiff AFS; and

      b.   Defendant admits he has "released the domain name to" Plaintiff AFS to the extent the term "released" as used is synonymous with the word "transferred," as in the Defendant transferred the domain name in question to a domain registry account belonging to Plaintiff AFS.

2.     Defendant denies the allegations contained in Paragraph 2 of the Plaintiffs' First Amended Complaint.

3.     Defendant denies the allegations contained in Paragraph 3 of the Plaintiffs' First Amended Complaint, and specifically denies that the Plaintiffs are entitled to relief under the causes of action identified under subparagraphs a., b., c., d., e., f., and g

4.     Defendant denies the allegations contained in Paragraph 4 of the Plaintiffs' First Amended Complaint, and specifically denies that Plaintiff Ray is entitled to relief under the causes of action identified under subparagraphs a. and b.

5.     Defendant denies the allegations contained in Paragraph 5 of the Plaintiffs' First Amended Complaint, and denies that the Plaintiffs' clams arise out of the laws of the United States pursuant to 28 U.S.C. §1331.

6.     Defendant denies the allegations contained in Paragraph 6 of the Plaintiffs' First Amended Complaint, and denies that the Court has supplemental jurisdiction over Plaintiffs' claims arising under Texas law pursuant to 28 U.S.C. §1367.

7.     Defendant denies the allegations contained in Paragraph 7 of the Plaintiffs' First Amended Complaint, and denies that the Court has personal jurisdiction over the Defendant, except that Defendant admits that he "was a member of [Plaintiff AFS], held a senior sales management and company officer position with [Plaintiff AFS], and at one time actively undertook to co-manage [Plaintiff AFS]."

8.    Defendant denies the allegations contained in Paragraph 8 of the Plaintiffs' First Amended Complaint, and denies that venue is proper in the Western District pursuant to 28 U.S.C. §1391(b)(2) and 18 U.S.C. §1965(b).

9.    Defendant lacks sufficient information and knowledge to admit or deny the allegations contained in Paragraph 9 of the Plaintiffs' First Amended Complaint.

10.    Defendant admits the allegations contained in Paragraph 10 of the Plaintiffs' First Amended Complaint, except that Defendant denies that the "principal place of business" is located at "932 Oatmeal Drive, Pflugerville, Texas 78660,"  as that address is a residence belonging to Michelle Ray.

11.    Defendant admits the allegations contained in Paragraph 11 of the Plaintiffs' First Amended Complaint, except that Defendant denies that he has made an appearance in this matter.

12.    Defendant admits the allegations contained in Paragraph 12 of the Plaintiffs' First Amended Complaint.

13.    Defendant denies the allegations contained in Paragraph 13 of the Plaintiffs' First Amended Complaint, except that he admits:

    a.    Defendant has a business called PaceSetters, which business he is currently operating;

    b.    That he has the skill and experience to sell products and services related to Archibus; and

    c.     that he discussed forming a business to Archibus products and services with Plaintiff Ray in August of 2015.

Defendant specifically denies that he is currently a "reseller of Archibus."

14.     Defendant denies the allegations contained in Paragraph 14 of the Plaintiffs' First Amended Complaint, except that he admits on September 16, 2015 he and Plaintiff Ray formed Plaintiff AFS as a Texas limited liability company.

15.     Defendant denies the allegations contained in the first sentence of Paragraph 15 of the Plaintiffs' First Amended Complaint, except that Defendant admits that on October 21, 2015 Defendant and Plaintiff Ray executed a company agreement for Plaintiff AFS which identifies that Ray owns 51% of AFS while Defendant owns 49% of AFS.  Defendant denies the allegations contained in the second sentence of Paragraph 15 of the Plaintiffs' First Amended Complaint, except that Defendant admits that the Attachment A to the company agreement for AFS identified "Go Daddy[sic] account setup for Office 365 and website hosting" as contributions for Defendant, which was removed by a subsequent amendment to said company agreement on June 7, 2016. Defendant denies the allegations contained in the third sentence of Paragraph 15 of the Plaintiffs' First Amended Complaint, except Defendant admits that he brought several contracts and customers into the AFS business, including contracts with UCLA Health.  Defendant denies the allegations contained in the fourth sentence of Paragraph 15 of the Plaintiffs' First Amended Complaint.

16.     Defendant denies all of the allegations contained in Paragraph 16 of the Plaintiffs' First Amended Complaint, except that he admits the following:

        a.  Section IV.H. of the company agreement of AFS states: "The Members shall have no fiduciary duties whatsoever, whether to each other or to the Company, unless that Member is a Manager or an Officer of the Company, in which instance they shall owe only the respective fiduciary duties of a Manager or Officer, as

applicable.  No Member shall bear any liability to the Company or to other present or former Members by reason of being or having been a Member.

b.  Section VIII.B. of the company agreement of AFS states: "The Managers and Officers shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Board of Managers excluding the interested Manager, consents thereto. The Managers and Officers shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Board of Managers excluding the interested Manager, consents thereto.  Pre-existing company of PaceSetters by partner is excluded from this statement;"  and

c.  The term "partner" in Section VIII.B. of the company agreement of AFS refers to Defendant.

17.    Defendant admits the allegations contained in Paragraph 17 of the Plaintiffs' First Amended Complaint.

18.    Defendant admits the allegations contained in the first sentence of Paragraph 18 of the Plaintiffs' First Amended Complaint, except he denies that "a simple majority of membership interest was sufficient to constitute a quorum for the transaction of any business at any board meetings."  Particularly, the term "simple majority" is not in the language of the amendment referred to, and the term "Majority" and "Majority in Interest" is used instead, which are not defined terms.  Defendant admits the allegations contained in the second sentence of Paragraph 18 of the Plaintiffs' First Amended Complaint, insofar as the second sentence identifies that Ray owned 51% of the "membership units" of AFS.

19.    Defendant admits the allegations contained in Paragraph 19 of the Plaintiffs' First Amended Complaint, except that he denies that the "Third Amendment to the LLC Operating Agreement" merely "restated and clarified" the member contributions – the statement of contributions in the original company agreement was amended, superseded, and replaced by the amendment.

20.    Defendant admits the allegations contained in Paragraph 20 of the Plaintiffs' First Amended Complaint.

21.    Defendant admits the allegations contained in Paragraph 21 of the Plaintiffs' First Amended Complaint, except Defendant specifically denies that Plaintiff AFS "expended considerable time, money, and effort in advertising and promoting its services" through its website.

22.    Defendant denies the allegations contained in the first sentence of Paragraph 22 of the Plaintiffs' First Amended Complaint, except Defendant admits that "consumers[sic] have come to recognize AFS as favorably[sic]" insofar as "consumers" means customers of building management software and solutions.  Defendant denied the allegations contained in the second sentence of Paragraph 22 of Plaintiffs' First Amended Complaint.

23.    Defendant denies the allegations contained in Paragraph 23 of the Plaintiffs' First Amended Complaint, except that Defendant admits that he was the "Director of Sales" of AFS since its inception in 2015.

24.    Defendant denies the allegations contained in Paragraph 24 of the Plaintiffs' First Amended Complaint, except Defendant admits that AFS executed a Texas DIR contract, by which AFS gained access to a contact list.  The access to the list, while limited, is not exclusive, and AFS is not the only company that has access to the Texas DIR contact list.

25.     Defendant denies the allegations contained in Paragraph 25 of the Plaintiffs' First Amended Complaint, except that Defendant admits that AFS received two "TIPS contracts in May 2020."

26.     Defendant denies the allegations contained in Paragraph 26 of the Plaintiffs' First Amended Complaint.

27.     Defendant does not have sufficient information or knowledge to admit or deny the allegations contained in the first sentence of Paragraph 27 of Plaintiffs' First Amended Complaint. Defendant denies the allegations contained in the second sentence of Paragraph 27 of the Plaintiffs' First Amended Complaint, except Defendant admits that he filed for Covid-19 Pandemic Unemployment Benefits for PaceSetters. Defendant admits the allegations contained in the third sentence of Paragraph 27 of Plaintiffs' First Amended Complaint. Defendant denies the allegations contained in the fourth sentence of Paragraph 27.

28.     Defendant denies all of the allegations contained in Paragraph 28 of the Plaintiffs' First Amended Complaint, except that Defendant admits the portion of the allegation in the last sentence of Paragraph 28 that states "Lynass demanded a substantial Cost of Living Adjustment in his salary because he resides in Southern California." Particularly, the cost of living in California is higher than the cost of living in Texas, where Plaintiff Ray resides. .

29.     Defendant denies the allegations contained in the first sentence of Paragraph 29 of the Plaintiffs' First Amended Complaint, except that Defendant admits that he changed the password to his private domain account under which the domain name www.absolute-fs.com had been registered and purchased. Defendant admits the allegations contained in the second sentence of Paragraph 29 of the Plaintiffs' First Amended Complaint insofar as "GoDaddy account" refers to Defendant's private domain account. Defendant denies the allegations contained in the third

sentence of Paragraph 29, except that Defendant admits "Ray made multiple requests for him to provide access to the account."  Particularly, the "GoDaddy account" referred to in Plaintiffs' allegation is a domain account that belonged to Defendant personally, and through which Defendant has registered several other domain names that do not have a relationship to the business of AFS.  The account never belonged to AFS and was created by Defendant in 2004, over a decade before Defendant even spoke with Plaintiff about forming AFS.  Since 2004, Defendant has registered and continues to maintain several domains unrelated to AFS under his account. Furthermore, the reason Defendant changed the password is because AFS was migrating, through a third-party, the web hosting of www.absolute-fs.com to another provider, and during that process the third-party inadvertently deleted several of Defendant's email addresses, including his PaceSetters information.  In order to minimize the damage that the third-party could do to his personal account, Defendant changed the password to prevent further access to the account.

30.    Defendant denies the allegations contained in the first sentence Paragraph 30 of the Plaintiffs' First Amended Complaint,  except Defendant admits that Ray "requested that Lynass provide her and the company with the login credentials" for the GoDaddy domain registry account through which Defendant originally registered the domain name www.absolute-fs.com.  However, again, this was Defendant's private account and never belonged to AFS, regardless of the claims to the domain name www.absolute-fs.com itself.  The "domain account" and the "domain name" are two different things, and one "domain account" can register multiple "domain names."  In this case, the domain account in question had been created in 2004 for Defendant's personal use and belonged to Defendant, and Defendant has registered and maintained multiple domain names unrelated to AFS under his account since 2004.  The domain name that, which was paid for personally by Defendant, was nonetheless transferred to a newly created domain account

belonging to AFS during the pendency of this litigation. Defendant denies the allegations contained in second sentence of Paragraph 30.

31.     Defendant admits the allegations contained in the first sentence of Paragraph 31 of the Plaintiffs' First Amended Complaint.  Defendant admits the allegations contained in the second sentence of Paragraph 31, except Defendant denies that he was in possession of "assets" of AFS, or that he was asked to return "confidential information."  Defendant denies the allegations of the third sentence of Paragraph 31, except that Defendant admits that Plaintiff Ray requested that Defendant return certain laptops that were issued to him by AFS.

32.     Defendant denies the allegations contained in the first sentence of Paragraph 32 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations contained in the second sentence of Paragraph 32, except Defendant admits the laptops contained information related to the AFS business.  Particularly, AFS runs on a cloud-based system through which all of its information is shared with its employees through the cloud, and therefore AFS has at all times had a copy of all of the information belonging to AFS that was on the laptops issued to Defendant. Defendant admits the third sentence of Paragraph 32.  More particularly, Defendant and Plaintiffs entered into an agreement during the pendency of this litigation for the return of the laptops that are complained of, which has been filed with the Court.

33.     Defendant denies the allegations contained in the first sentence of Paragraph 33 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations contained in the second sentence of Paragraph 33 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations contained in the first sentence of Paragraph 33 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations contained in the fourth sentence of Paragraph 33 of the Plaintiffs' First Amended Complaint.  Particularly, the domain account complained of is a

personal account that had belonged to Defendant since 2004 through which Defendant has registered and maintains several domains unrelated to AFS, and AFS never had a right to access said account. To the extent that AFS claims ownership rights in the domain name "www.absolute-fs.com," that domain name was transferred to AFS after AFS finally created its own domain account during the pendency of this litigation, and therefore any dispute regarding the ownership of the domain name is now moot.

34.    Defendant denies the allegations contained in Paragraph 34 of the Plaintiffs' First Amended Complaint.

35.    Defendant denies the allegations contained in Paragraph 35 of the Plaintiffs' First Amended Complaint.

36.    Defendant denies the allegations contained in the first sentence of Paragraph 36 of the Plaintiffs' First Amended Complaint, except that Defendant admits that Ray and AFS made a demand through their attorneys to "release" the internet domain name for www.absolute-fs.com. Defendant denies the allegations contained in the second sentence of Paragraph 36. Particularly, the domain account complained of was a personal account belonging to Defendant since 2004 through which Defendant has registered and maintains multiple domains unrelated to AFS, and AFS never had any right to access said account.   Defendant denies the allegations contained in the third sentence of Paragraph 36. Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in the fourth sentence of Paragraph 36.

37.    Defendant denies the allegations contained in Paragraph 37 of the Plaintiffs' First Amended Complaint. Particularly, Plaintiffs entered into an agreement regarding the custody and review of the contents prior to Defendant's attorneys releasing the laptops to Plaintiffs, which agreement has not been fully performed. Plaintiffs insisted on proposing their own third-party

Electronic Stored Information ("ESI") neutral to image the laptops previously in Defendant's possession, however, the party chosen by Plaintiffs did not respond to Plaintiffs' counsel and did not engage with Plaintiffs' counsel to serve as the ESI neutral. A third-party neutral to image the laptops' contents still needs to be designated before Defendant's counsel can release the laptops to Plaintiffs' possession, as per the agreement between counsel dated January 14, 2021.

38.    Defendant denies the allegations contained in the first sentence of Paragraph 38 of the Plaintiffs' First Amended Complaint. Defendant denies the allegations contained in the second sentence of Paragraph 38. Particularly, Defendant never contacted the client referred to by Plaintiffs, and in fact it was Plaintiffs who contacted the client to inform them that Defendant was no longer employed by AFS. It was only after contact by the Plaintiffs that the client then contacted Defendant. Defendant denies the allegations contained in the third sentence of Paragraph 38. Defendant denies the allegations contained in the fourth sentence of Paragraph 38.

39.    Defendant denies all of the allegations contained in Paragraph 39 of the Plaintiffs' First Amended Complaint.

40.    Defendant denies the all of the allegations contained in Paragraph 40 of the Plaintiffs' First Amended Complaint. Plaintiffs retained full control over the web hosting of www.absolute-fs.com and did not need access to the domain name in order to manage their website or create new email addresses.

41.    Defendant denies the allegations contained in Paragraph 41 of the Plaintiffs' First Amended Complaint.

42.    Defendant denies the allegations re-alleged in Paragraph 42 of the Plaintiffs' First Amended Complaint, as identified and stated above.

43.     Defendant denies all of the allegations contained in Paragraph 43 of the Plaintiffs' First Amended Complaint. and specifically denies that AFS has a distinctive or famous mark entitle to protection, that the Defendant used the "AFS domain name," and that Defendant used the "AFS domain name" with a bad faith intent to profit from it.

44.     Defendant denies all of the allegations contained in Paragraph 44 of the Plaintiffs' First Amended Complaint.  Specifically, Defendant denies the second sentence of Paragraph 44 that "Absolute Facility Solutions" is a distinctive trademark or service mark.  Specifically, Defendant denies the third sentence of Paragraph 44 that the domain name "absolute-fs.com" is "confusingly similar to AFS's mark."  Specifically, Defendant lacks sufficient knowledge and information to admit or deny the fourth sentence of Paragraph 44 that he "has no trademark or other intellectual property rights in the domain name."  "Absolute Facility Solutions" was not a unique mark at the time that the web domain www.absolute-fs.com was purchased, as AFS was newly formed.  In addition, "Absolute Facility Solutions" is not a unique trade name, as a janitorial cleaning service in California has the same name, allegedly since 2009, under the web domain www.absoluteinc.com.  Furthermore, "Absolute Facility Solutions" is not a federally registered trademark.

45.     Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 45 of the Plaintiffs' First Amended Complaint.  The terms "intellectual property rights in the domain name" is not defined and it is not certain what Plaintiffs mean by use of these terms.  Defendant admits that he purchased the domain name www.absolute-fs.com under his personal account and personally paid for the domain name around the time of the formation of AFS.

46.     Defendant generally denies the allegations contained in Paragraph 46 of the Plaintiffs' First Amended Complaint, and specifically:

      a.  Defendant admits that he does not have any trademark right to the name "Absolute Facility Solutions," does not have sufficient knowledge or information to admit or deny that he had "other intellectual property rights" in the domain name www.absolute-fs.com, and admits that he personally purchased the domain name www.absolute-fs.com under his personal domain account near the time of the formation of AFS as alleged in subpart a. to Paragraph 46;

      b.  Defendant admits the allegations contained in subpart b. to Paragraph 46;

      c.  Defendant admits that he has not used "the AFS domain name in connection with the bona fide offering of any goods or services" personally, but denies that he has used the domain name in question as alleged in subpart c. to Paragraph 46;

      d.  Defendant denies the allegations contained in subpart d. of Paragraph 46, except he admits that he has not personally used "the mark in a site accessible under the domain name";

      e.  Defendant denies all the allegations contained in subpart e. of Paragraph 46. Particularly, Defendant has never used the domain name for any purpose;

      f.  Defendant denies all of the allegations contained in subpart f. of Paragraph 46, and particularly denies offering to sell the domain name in question to any third party;

      g.  Defendant denies all of the allegations contained in subpart g. of Paragraph 46;

      h.  Defendant denies all of the allegations contained in subpart h. of Paragraph 46, and particularly denies that "Absolute Facility Solutions" is a famous mark that may be subject to dilution; and

      i.   Defendant lacks sufficient knowledge and information to admit or deny subpart i. of Paragraph 46, particularly because the allegation simply does not make sense as it states that "the AFS mark is both distinctive and famous" and then states "is not distinctive and famous within the meaning of 15 U.S.C §1125(c)(1)."

47.    Defendant denies the allegations contained in Paragraph 47 of the Plaintiffs' First Amended Complaint.

48.    Defendant denies the allegations contained in Paragraph 43 of the Plaintiffs' First Amended Complaint.  Defendant specifically denies the use of the term "blackmail," which is inflammatory and an attempt to mischaracterize the facts.  Defendant had a bona fide belief that he owned the domain name www.absolute-fs.com, since he registered the domain name, paid for the domain name, and, to Defendant's knowledge, did not receive any reimbursement for the domain name from AFS.  Defendant offered to sell the domain to AFS out of the good faith believe that he was the rightful owner of the domain name, which is separate from the website.  At no point did Defendant offer to sell the domain name to a third party or to somehow threaten to shut down AFS's website, which was already being hosted by a different company than GoDaddy, the original domain registrar.

49.    Defendant denies the allegations re-alleged in Paragraph 49 of the Plaintiffs' First Amended Complaint, as identified and stated above.

50.    Defendant denies that the partially restated statutory language of 18 U.S.C. §1893(3) contained in Paragraph 50 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

51.    Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in the first sentence of Paragraph 51 of the Plaintiffs' First Amended Complaint.

Particularly, Defendant cannot determine what "[t]hese trade secrets" refers to, and therefore cannot properly determine if the items referred to indeed are "trade secrets." Defendant denies the allegations contained in the second sentence of Paragraph 51. Particularly, Defendant disagrees with the example, as, for example, customers that publicly solicit bids for projects will state what their "preferences and customizations" desires are in the specifications for the project.

52.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in first sentence of Paragraph 52 of the Plaintiffs' First Amended Complaint. Particularly, Defendant cannot determine what "the trade secrets" refers to, and therefore cannot make a determination if the information was in fact a "trade secret" and whether the steps taken were sufficient to keep it secret if it was a trade secret. Defendant denies the second sentence of Paragraph 52. Particularly, the information stated was known to some personnel not in managerial positions, known to customers and potential customers as it was used for marketing of services, and openly disclosed as required by certain governmental entities' standards for bidding on projects, particularly pricing information. Defendant denies the allegations contained in the third sentence of Paragraph 52.

53.    Defendant denies the partially restated language of 18 U.S.C. §§1839(5) and (6) contained in Paragraph 53 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

54.    Defendant denies that the restated statutory language of 18 U.S.C. 1836(b)(1) in Paragraph 54 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

55.    Defendant lacks sufficient information to admit or deny the third sentence of Paragraph 55, as what is alleged to be "trade secrets" is not specified. Defendant admits the allegations contained in the second sentence of Paragraph 55 to the extent "sells" means to offer for sale. Defendant denies the third sentence of Paragraph 55.

56.    Defendant denies the allegations contained in Paragraph 56 of the Plaintiffs' First Amended Complaint.

57.    Defendant denies the allegations re-alleged in Paragraph 57 of the Plaintiffs' First Amended Complaint, as identified and stated above.

58.    Defendant denies that the partial restatement of the statutory language of 18 U.S.C. §1030 in Paragraph 58 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

59.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 59 of the Plaintiffs' First Amended Complaint.

60.    Defendant denies the partially restated statutory language of 18 U.S.C. §1030 Paragraph 60 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

61.    Defendant denies the allegations contained in the first sentence of Paragraph 61 of the Plaintiffs' First Amended Complaint, except that Defendant admits that Plaintiff Ray requested that Defendant return the laptops that were issued to him by AFS.  Defendant denies the allegations contained in the second sentence of Paragraph 61.  Particularly, Defendant, as was customary for AFS management, used the laptops issued to him for both business and personal matters, including his PaceSetters business.  The personal information and PaceSetters information on the laptops did not belong to AFS, and AFS and Ray did not have any right to access said information.

62.    Defendant denies the allegations contained in Paragraph 62 of the Plaintiffs' First Amended Complaint.

63.    Defendant denies the allegations contained in Paragraph 63 of the Plaintiffs' First Amended Complaint.

64.    Defendant denies all of the allegations contained in Paragraph 64 of the Plaintiffs' First Amended Complaint.

65.     Defendant denies the allegations contained in Paragraph 65 of the Plaintiffs' First Amended Complaint.

66.     Defendant denies the allegations re-alleged in Paragraph 66 of the Plaintiffs' First Amended Complaint, as identified and stated above.

67.     Defendant denies that the partial restatement of the statutory language of Tex. Civ. Prac. & Rem. Code §134A in Paragraph 67 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

68.     Defendant denies the allegations contained in Paragraph 68 of the Plaintiffs' First Amended Complaint, except Defendant admits the allegations to the extent that the financial information, business operations methods, and identity of AFS's vendors and contractors, are not generally known to the public.

69.     Defendant denies the allegations contained in the first sentence of Paragraph 69 of the Plaintiffs' First Amended Complaint, except that Defendant admits that, to the extent AFS has any trade secrets that qualify for protection under the Texas Uniform Trade Secrets Act, such trade secrets would have to "derive independent economic value to AFS from not being generally known or readily ascertainable by legal means." Defendant denies the allegations contained in the second sentence of Paragraph 69. Particularly, the preferences and customizations of certain customers that publicly solicit bids for projects are disclosed during the bidding process, and said preferences and customizations would not be trade secret in those instances. Further, the preferences and customizations are known to the customers themselves, and should they choose to engage a vendor other than AFS, the customer would be free to disclose those preferences and customizations to the new vendor. Finally, the software that AFS uses and configures on behalf of its customers is

open source software, and the code customizations that are done can be viewed by and is actually owned by the customer.

70.    Defendant admits the allegations contained in the first sentence of Paragraph 70 of the Plaintiffs' First Amended Complaint.  Defendant denies the second sentence of Paragraph 70, as "[c]ustomer lists, supplier lists, pricing data, strategies, and margins" could have been disclosed, as part of a bidding process, to customers.  Defendant denies the allegations contained in the third sentence of Paragraph 70, except that Defendant admits that "[t]his information was not shared with others outside of management" within AFS.

71.    Defendant denies that the partial restatement of the statutory language of Tex. Civ. Prac. & Rem. Code §134A.002(3) contained in Paragraph 71 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

72.    Defendant denies the allegations contained in the first sentence of Paragraph 72 of the Plaintiffs' First Amended Complaint, except that he admits that he "had a duty to maintain the secrecy of AFS's trade secrets."  Defendant denies the allegations contained in the second sentence of Paragraph 72.  Defendant denies the allegations contained in the third sentence of Paragraph 72. Defendant denies the allegations contained in the fourth sentence of Paragraph 72.

73.    Defendant denies the allegations re-alleged in Paragraph 73 of the Plaintiffs' First Amended Complaint, as identified and stated above.

74.    Defendant denies the allegations contained in the first sentence of Paragraph 74 of the Plaintiffs' First Amended Complaint, except that Defendant admits that Paragraph VIII.A. of the AFS company agreement states that "… each Manager and Officer shall have a fiduciary duty of loyalty and care similar to that of managers of business corporations organized under the laws of Texas." Defendant denies the allegations contained in the second sentence of Paragraph 74, except

that Defendant admits, other than Defendant's business of PaceSetters, Paragraph VIII.B. of the AFS company agreement states that "[t]he Managers and Officers shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Board of Managers excluding the interested Manager, consents thereto." Defendant denies the allegations contained in the third sentence of Paragraph 74, except that Defendant admits that Paragraph VIII.B. states that "[p]re-existing company of PaceSetters by partner[sic] is excluded from this statement." Particularly, the distinction drawn between PaceSetters and Defendant is nonsensical in light of the fact that PaceSetters was, until recently, a sole proprietorship, and therefore there is no legal distinction between Defendant and PaceSetters. Plaintiffs were on notice of the ownership and legal structure of PaceSetters at all times.

75.    Defendant denies the allegations contained in Paragraph 75 of the Plaintiffs' First Amended Complaint, except that Defendant admits that he "was both a Manager and Officer of AFS." Particularly, the duty of loyalty and care did not extend to Defendant's ability to compete with AFS through his business of PaceSetters.

76.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 76 of the Plaintiffs' First Amended Complaint.

77.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in the first sentence of Paragraph 77 of the Plaintiffs' First Amended Complaint. Defendant denies the allegations contained in the second sentence of Paragraph 77. Particularly, Defendant was permitted to put his competitive interests in PaceSetters ahead of the interests of AFS.

78.    Defendant denies the allegations contained in the first sentence of Paragraph 78 of the Plaintiffs' First Amended Complaint, except that Defendant admits that he was the "Director of

Sales and one of the original managing members of AFS." Defendant denies the allegations contained in the second sentence of Paragraph 78, except that Defendant admits that he had access to information about AFS's customers and vendors.  Defendant admits the allegations contained in the third sentence of Paragraph 78.  Defendant denies the allegations contained in the fourth sentence of Paragraph 78.  Defendant denies the allegations contained in the fifth sentence of Paragraph 78.  Particularly, the domain account under which the domain name www. absolute-fs.com was registered belonged to Defendant personally, Defendant has owned and used the account since 2004, and AFS did not have a right to access the domain account complained of.

79.    Defendant lacks sufficient information to admit or deny the allegations contained in the first sentence of Paragraph 79 of the Plaintiffs' First Amended Complaint.  Particularly, it is not known what act is referenced by "AFS justifiably placed its trust in Defendant."  Defendant denies the allegations contained in the second sentence of Paragraph 79.  Defendant denies the allegations contained in the third sentence of Paragraph 79.

80.    Defendant denies the allegations re-alleged in Paragraph 80 of the Plaintiffs' First Amended Complaint, as identified and stated above.

81.    Defendant denies that the language of Paragraph VIII.C. of the AFS company agreement quoted in Paragraph 81 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

82.    Defendant denies the allegations contained in Paragraph 82 of the Plaintiffs' First Amended Complaint, except that Defendant admits that Paragraph VIII.C. of the AFS company agreement states that "The Managers and Officers shall owe fiduciary duties of disclosure, good faith and fair dealing to the Company and to the other Managers, but shall owe no such duties to Officers unless the Officer is a Manager."

83.    Defendant lacks sufficient knowledge and information to admit or deny the allegations contained in Paragraph 83 of the Plaintiffs' First Amended Complaint.  Particularly, the term "good faith" generally means that one has honest and sincere intentions, not to act "in the best interests of the company."

84.    Defendant denies the allegations contained in the first sentence of Paragraph 84 of the Plaintiffs' First Amended Complaint, except that Defendant admits that he was the "Director of Sales and one of the original managing members of AFS."  Defendant denies the allegations contained in the second sentence of Paragraph 84, except that Defendant admits that he had access to information about AFS's customers and vendors.  Defendant admits the allegations contained in the third sentence of Paragraph 84.  Defendant denies the allegations contained in the fourth sentence of Paragraph 84.  Defendant denies the allegations contained in the fifth sentence of Paragraph 84.  Particularly, the domain account under which the domain name www. absolute-fs.com was registered belonged to Defendant personally, Defendant has owned and used the account since 2004, and AFS did not have a right to access the domain account complained of.

85.    Defendant denies the allegations contained in Paragraph 85 of the Plaintiffs' First Amended Complaint.  Particularly, it is not known what act is referenced by "AFS and justifiably placed its trust in Defendant."  Further, Defendant did not owe a duty to place "Ray's best interests before his own self-interest."  Defendant denies the allegations contained in the second sentence of Paragraph 79.  Defendant denies the allegations contained in the third sentence of Paragraph 79.  Defendant denies the allegations contained in the fourth sentence of Paragraph 79.

86.    Defendant denies the allegations contained in Paragraph 86 of the Plaintiffs' First Amended Complaint.

87.    Defendant denies the allegations re-alleged in Paragraph 87 of the Plaintiffs' First Amended Complaint, as identified and stated above.

88.    Defendant denies the allegations contained in the first sentence of Paragraph 88 of the Plaintiffs' First Amended Complaint, except Defendant admits that "AFS owns its assets" and AFS owns the laptops at issue.  Defendant lacks sufficient knowledge and information to admit or deny that allegations in the second sentence of Paragraph 88, except Defendant admits that laptops are personal property.   Defendant denies the allegations contained in the third sentence of Paragraph 88.  Defendant denies the allegations contained in the fourth sentence of Paragraph 88. Particularly, the laptops at issue were issued to Defendant for his personal use and for company business, and Defendant did not refuse to return the laptops but insisted that the shipping be paid for by AFS, which was a reasonable request in light of the circumstances.  Furthermore, the laptops are now in the possession of Defendant's attorneys, pursuant to an agreement reached among the parties for the return of said laptops and the examination of the contents of the laptops.

89.    Defendant denies all of the allegations contained in Paragraph 89 of the Plaintiffs' First Amended Complaint.

90.    Defendant denies all of the allegations contained in Paragraph 90 of the Plaintiffs' First Amended Complaint.

91.    Defendant denies the allegations re-alleged in Paragraph 91 of the Plaintiffs' First Amended Complaint, as identified and stated above.

92.    Defendant denies all of the allegations contained in Paragraph 92 of the Plaintiffs' First Amended Complaint.  Particularly, the "key client[] in southern California" contacted Defendant after Plaintiffs contacted the client to inform it that Defendant had been terminated.  The client asked Defendant if he could support the work that was then being performed by AFS, and after

Defendant assured them that he could, the client chose to terminate its relationship with AFS. Further, Defendant convinced the client to pay invoices in the amount of $88,000 that it would have otherwise refused to pay to AFS.

93.     Defendant denies that tortious interference under Texas law as recited in Paragraph 93 of the Plaintiffs' First Amended Complaint is applicable to the present suit.

94.     Defendant admits the allegation in the first sentence of in Paragraph 94 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations in the second sentence of Paragraph 94, except Defendant admits that "AFS has lost the contract."  Defendant denies the allegations in the third sentence of Paragraph 94, except Defendant admits that the contract had an estimated value of "over $300,000.00 per year including software renewals."  However, the value of the contract was not certain due to the fact that the contract was composed of a series of proposals and, if approved, corresponding purchase orders issued by the client, each of which expired annually and required AFS to resubmit proposals again to the client for approval.   The client never had an obligation to approve any given proposal submitted by AFS, and AFS would not have income or a contract until that approval was given and a purchase order was issued.  Defendant denies the allegations in the fourth sentence of Paragraph 94. Defendant denies the allegations contained in the fifth sentence of Paragraph 94, except Defendant admits "AFS lost the contract." Defendant denies the allegations in the fifth sentence of Paragraph 94.  Defendant denies the allegations of the sixth sentence of Paragraph 94.  Defendant denies that allegations contained in the seventh sentence of Paragraph 94.

95.     Defendant denies the allegations re-alleged in Paragraph 95 of the Plaintiffs' First Amended Complaint, as identified and stated above.

96.    Defendant denies the allegations contained in Paragraph 96 of the Plaintiffs' First Amended Complaint, except Defendant admits the following:

      a.    "The Company Agreement is a valid contract to which Lynass is a party."

      b.    "Nothing in the Company Agreement vested ownership in the domain registration in Lynass or made AFS's use of the domain registration contingent of[sic] Lynass's employment as a Director of Sales."

97.    Defendant denies the allegations contained in Paragraph 97 of the Plaintiffs' First Amended Complaint.

98.    Defendant denies the allegations re-alleged in Paragraph 98 of the Plaintiffs' First Amended Complaint, as identified and stated above.

99.    Defendant denies the allegations contained in the first sentence of Paragraph 99 of the Plaintiffs' First Amended Complaint.  Defendant denies the allegations contained in the second sentence of Paragraph 99, except that he admits he had the knowledge, skill, and experience in the facilities management industry necessary to perform his job as Director of Sales for AFS.

100.    Defendant denies all of the allegations contained in Paragraph 100 of the Plaintiffs' First Amended Complaint.  Particularly, Defendant and Ray have known each other professionally for over 15 years, and Defendant recruited Ray to a mutual third-party employer immediately prior to the formation of AFS.  It was while employed at this third-party employer that Defendant and Ray began having discussions regarding the formation of a facilities management business.  Ray was familiar with Defendant's experience and expertise at all times, having worked with Defendant for several years.

101.    Defendant denies the allegations re-alleged in Paragraph 101 of the Plaintiffs' First Amended Complaint, as identified and stated above.

102.    Defendant denies that Plaintiff AFS is entitled to reasonable attorney's fees as stated in Paragraph 102 of the Plaintiffs' First Amended Complaint.

103.    Defendant denies the allegations contained in Paragraph 103 of the Plaintiffs' First Amended Complaint and denies that the Plaintiffs are entitled to an award of attorney's fees.

104.    Defendant denies the allegations contained in Paragraph 104 of the Plaintiffs' First Amended Complaint, except that Defendant lacks sufficient knowledge and information to admit or deny that "Plaintiff[sic] seeks to recover their reasonable attorneys' fees and costs, along with pre-judgment and post-judgment interest, under the statutes cited above or as otherwise allowed by law."

105.    Defendant denies the allegations contained in Paragraph 105 of the Plaintiffs' First Amended Complaint.

106.    Defendant cannot deny or admit Plaintiffs' request for jury contained in Paragraph 106 of Plaintiffs' First Amended Complaint.

107.    Defendant denies that Plaintiffs are entitled any of the relief prayed for in Paragraph IX. Prayer of Plaintiffs' First Amended Complaint.


## II.

## DEFENDANT'S AFFIRMATIVE DEFENSES

108.    Defendant asserts the following affirmative defenses to Plaintiffs' Count One (AFS): Violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), ¶¶42 – 48 of Plaintiffs' First Amended Complaint:

      a.    "Absolute Facility Solutions" was not a famous mark at the time that Defendant registered the domain name www.absolute-fs.com.  In fact, the mark "Absolute

Facility Solutions" is not unique, as a company in California that has been allegedly in business since 2009, six years before the formation of AFS, has had the same mark for janitorial services and has a website at address www.absolutefsinc.com. "Absolute Facility Solutions" was neither a distinctive or famous mark at the time of the registration of the domain name www.absolute-fs.com, and therefore is not protected under the ACPA.

b.   Defendant did not have a bad faith intent to profit from his registration of the domain name www.absolute-fs.com at the time that the domain name was registered, and therefore is not liable under the ACPA. *See  GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011)("bad faith" determined at the time of the initial registration, not after the mark becomes distinctive later in time); *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275 (5th Cir. 2002)(defendant registered ernestandgallo.com well after the formation of Ernest & Gallo Winery had become a famous mark).

c.   Defendant did not traffic in or use the domain name www.absolute-fs.com, and therefore is not liable under the ACPA.  Defendant has never operated or created a website with the domain name www.absolute-fs.com, nor has Defendant ever offered the domain name www.absolute-fs.com for sale to any third-party.

d.   Defendant's contribution to AFS as a member did not include the domain name www.absolute-fs.com.    While Defendant's contribution under the original company agreement of AFS included "web hosting."  "Web hosting" does not necessarily include a domain name, which is separate from the actual hosting of a website.  In fact, AFS, prior to Defendant's termination, took steps to migrate the

web hosting to a third-party from GoDaddy, the original web host. However, a subsequent amendment eliminated "web hosting" and did not add "domain name" as a contribution, thus Defendant's contribution did not consist of any domain name to AFS.

109.    Defendant asserts the following affirmative defenses to Plaintiffs' Count Two (AFS): Violation of Defend Trade Secrets Act, ¶¶49 – 56 of Plaintiffs' First Amended Complaint:

    a.  Defendant did not acquire the trade secrets belonging to AFS through improper means.

    b.  Defendant did not use or disclose any information qualifying as a trade secret belonging to AFS.

    c.  The customer lists from TIPS and Texas DIR and other third-party sources are not the exclusive property of AFS, and therefore are not the trade secret belonging to AFS. Further, said customer lists are available to entities other than AFS, and therefore are generally known to the public. Finally, the customers on said lists are publicly known and all awards of contracts by those customers are made publicly available on their websites, and therefore are not trade secret.

    d.  The items claimed as trade secret by AFS are generally known to its competitors are in the public domain, and therefore are not trade secrets.

    e.  AFS uses third-party software under various licenses, and therefore AFS is not the owner of any software-related trade secrets, which trade secrets, if any, belong to the third-party providers of said software.

    f.  Particularly, UCLA Health was a customer of Defendant and his sole proprietorship PaceSetters for years prior to the formation of AFS, and therefore any knowledge

regarding UCLA Health was developed independently by Defendant and is not the trade secret of AFS.  Further, AFS was a subcontractor to PaceSetters for UCLA Health for several years, and therefore all of the knowledge developed by PaceSetters and Defendant belongs to PaceSetters and Defendant.

    g.  Plaintiffs did not suffer any damages as the result of any alleged misappropriation.

110.   Defendant asserts the following affirmative defenses to Plaintiffs' Count Three (AFS): Violation of Computer Fraud and Abuse Act, ¶¶57 – 65 of Plaintiffs' First Amended Complaint:

    a.  The domain account complained of is a personal GoDaddy account belonging to Defendant which he created in 2004, and under which Defendant has registered and maintains multiple domains.  The domain account was never the property of AFS, and AFS never had a right to access the Defendant's personal domain account without his permission..

    b.  The GoDaddy computers and servers are not the property of AFS and do not belong to AFS, and therefore any change in the passwords to said accounts are not a violation of the Computer Fraud and Abuse Act.

    c.  Merely changing the password to a domain registry is not "damage" and does not result in an "impairment to the integrity or availability of data, a program, a system, or information" sufficient to violate the Computer Fraud and Abuse Act.  *See* 18 U.S.C. §1030(d)(8); *see also Davies v. Afilias Ltd.*, 293 F. Supp. 2d 1265, 1273 (M.D. Fla. 2003), aff'd, 129 Fed. Appx. 598 (11th Cir. 2005).

    d.  There were no damages suffered by AFS due to the changing of any alleged password to the domain registry account, including no interruption of the AFS website or web-related services.

     e.   Defendant had authorization to access the domain registry account and change the password.

     f.   Defendant did not intentionally access a protected computer without authorization.

     g.   In the alternative, Defendant changed the password to the domain registry account with authorization to do so.

111.    Defendant asserts the following affirmative defenses to Plaintiffs' Count Four (AFS): Violation of the Texas Uniform Trade Secrets Act ("TUTSA"), ¶¶66 – 72 of Plaintiffs' First Amended Complaint:

     a.   Defendant did not acquire the trade secrets belonging to AFS through improper means.

     b.   Defendant did not disclose or use any trade secrets belonging to AFS.

     c.   Defendant did not use or disclose any information qualifying as a trade secret belonging to AFS.

     d.   The customer lists from TIPS and Texas DIR and other third-party sources are not the exclusive property of AFS, and therefore are not the trade secret belonging to AFS.  Further, said customer lists are available to entities other than AFS, and therefore are generally known to the public, and all contracts awarded through TIPS and Texas DIR are made known to the public through their respective websites. Finally, the customers on said lists are publicly known and advertised freely to the public, and therefore are not trade secret.

     e.   The items claimed as trade secret by AFS are generally known to its competitors are in the public domain, and therefore are not trade secrets.

    f.   AFS uses third-party software under various licenses, and therefore AFS is not the owner of any software-related trade secrets, which trade secrets, if any, belong to the third-party providers of said software.

    g.   Particularly, UCLA Health was a customer of Defendant and his sole proprietorship PaceSetters for years prior to the formation of AFS, and therefore any knowledge regarding UCLA Health was developed independently by Defendant and is not the trade secret of AFS.  Further, AFS was a subcontractor to PaceSetters for UCLA Health for several years, and therefore all of the knowledge developed by PaceSetters and Defendant belongs to PaceSetters and Defendant.

    h.   Plaintiffs did not suffer any damages as the result of any alleged misappropriation.

112.   Defendant asserts the following affirmative defenses to Plaintiffs' Count Five (AFS): Breach of Fiduciary Duty, ¶¶73 – 79 of Plaintiffs' First Amended Complaint:

    a.   Defendant was specifically exempted from any prohibition on competition with AFS under the company agreement, particularly through PaceSetters, which was a sole proprietorship at the time and not a separate legal entity from Defendant.  In other words, PaceSetters and Defendant were legally one and the same during the Defendant's tenure as a manager and employee of AFS.

    b.   The domain account to which Defendant changed the password does not belong to AFS and is the exclusive property of Defendant.  Defendant created the account in 2004 for his personal use, and has registered and maintained multiple domains unrelated to AFS under the account since 2004.  AFS did not have a right to access the domain account without the permission of Defendant.

Case No. 1:21-cv-00020-LY; *Ray, et. al. v. Lynass, et. al.*
Defendant's Original Answer, Affirmative Defenses, and Counterclaims

Page 30 of 50

    c.  In the alternative, Defendant had authorization to change the password to the domain registry account.

    d.  Defendant did not receive any personal benefit from changing the password to the domain account.

    e.  Plaintiffs suffered no damages from Defendant changing the password to the domain account complained of, including no interruption to AFS's website or services due to the fact that the web hosting was migrated to a third-party..

113.    Defendant asserts the following affirmative defenses to Plaintiffs' Count Six (AFS, Michelle Ray): Breach of Fiduciary Duty, ¶¶80 – 86 of Plaintiffs' First Amended Complaint:

    a.  Defendant was specifically exempted from any prohibition on competition with AFS under the company agreement, particularly through PaceSetters, which was Defendant's sole proprietorship and not a separate entity at the time of the alleged events complained of.

    b.  The domain account to which Defendant changed the password does not belong to AFS and is the exclusive property of Defendant .  Defendant created the account in 2004 for his personal use, and has registered and maintained multiple domains unrelated to AFS under the account since 2004.  AFS did not have a right to access the domain account without the permission of Defendant.

    c.  In the alternative, Defendant had authorization to change the password to the domain account.

    d.  Defendant did not receive any personal benefit from changing the password to the domain account.

    e.   Plaintiffs suffered no damages from Defendant changing the password to the domain account complained of, including no interruption to AFS's website or services due to the fact that the web hosting was migrated to a third-party.

114.   Defendant asserts the following affirmative defenses to Plaintiffs' Count Seven (AFS): Conversion, ¶¶87 – 90 of Plaintiffs' First Amended Complaint:

    a.   Defendant was in possession of laptops issued to him by AFS with consent from AFS.

    b.   Defendant and Plaintiffs entered into an agreement for the orderly return of the laptops, and Defendant returned the laptops to his attorneys in compliance with the agreement. Defendant is no longer in possession of the laptops and is not exercising any wrongful control over the laptops. Accordingly, this claim is moot.

    c.   Insofar as Plaintiff AFS raises a Texas State Law claim for conversion regarding misappropriation of trade secrets in Paragraph 89 of its First Amended Complaint, all common law claims for misappropriation of trade secrets is preempted by the Texas Uniform Trade Secrets Act and are untenable claims. Tex. Civ. Prac. & Rem. Code §134A.007; *see, e.g. HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021); *see also StoneCoat of Tex., LLC v. ProCal Stone Design*, LLC, 426 F. Supp. 3d 311, 333 (E.D. Tex. 2019).

115.   Defendant asserts the following affirmative defenses to Plaintiffs' Count Eight (AFS): Tortious Interference with Contract, ¶¶91 – 94 of Plaintiffs' First Amended Complaint:

    a.   Defendant was exempted from any prohibition on competing with AFS in the AFS company agreement, and therefore AFS is estopped from complaining about any such competition.

b. Defendant did not solicit the counterparty to the contract complained of, and did not take any overt action to interfere with the contract.

c. Defendant and PaceSetters had a legal right to communicate with the counterparty to the contract complained of.

d. Defendant's conduct was not independently tortious.

116.    Defendant asserts the following affirmative defenses to Plaintiffs' Count Nine (AFS): Breach of Contract, ¶¶95 – 97 of Plaintiffs' First Amended Complaint:

a. Company agreement was amended to remove "web hosting" as a contribution from Defendant, therefore any activities related to web hosting performed by Defendant were not contributions to AFS, and AFS is estopped from claiming any such activities as contributions.

b. AFS waived any obligation on the part of Defendant to transfer the domain name by not enforcing its rights to do so for over 4 years from the formation of AFS.

c. Defendant asserts the affirmative defense of the statute of limitations, which required AFS to bring a claim for breach of contract within 4 years.  Defendant did not transfer the domain name to AFS upon its formation, and AFS did not bring forth this claim until June 7, 2021, more than 4 years after the formation of AFS.

d. Defendant asserts the affirmative defense of laches.  AFS did nothing for over 4 years with regard to the ownership of the domain name, and Defendant changed his position in good faith to his detriment, including the changing of the password to deny access to the domain registry account.

e. AFS suffered no damages from the alleged refusal of Defendant to give the password to Defendant's personal domain registry account, including no

interruption to AFS's website or services due to the fact that the web hosting was migrated to a third-party..

117.    Defendant asserts the following affirmative defenses to Plaintiffs' Count Ten (Ray) Fraud, ¶¶98 – 100 of Plaintiffs' First Amended Complaint:

   a.   Defendant asserts the affirmative defense of the statute of limitations, which is 4 years.  Tex. Civ. Prac. & Rem. Code §16.004(a)(4).  Plaintiff Ray's claim for Fraud was raised for the first time in the Plaintiffs' First Amended Complaint, which was filed on June 7, 2021.  Ray's allegations state that she was fraudulently induced into forming AFS with Defendant in 2015, and Plaintiff Ray should have discovered the alleged misrepresentations shortly thereafter and brought the claim no later than in 2019.

   b.   Defendant asserts the affirmative defense of waiver.  Plaintiff Ray could have and should have discovered the alleged misrepresentations made by Defendant shortly after the formation of AFS.  However, Ray continued to engage in the business of AFS for nearly 5 years with Defendant, and therefore waived whatever misrepresentations were allegedly made.

   c.   Plaintiff Ray did not justifiably rely on the alleged misrepresentations made by Defendant, evidenced in part by the fact that she continued to be part of AFS and allowed Defendant to retain the title of Director of Sales and be a manager of AFS for over 5 years.

   d.   Ray has suffered no injury from the alleged fraud by Defendant.  In fact, Defendant brought contracts into AFS at its inception, including the California client

complained of above, which contracts provided Ray with income for the first 4 years of the operation of AFS.

## III.

## DEFENDANT'S COUNTERCLAIMS

## JURISDICTION

118.    The Court may exercise supplemental jurisdiction over Defendant's counterclaims.  28 U.S.C. §1367.

## FACTS

119.    Mr. Lynass has been in the business of selling and managing facilities management software, including as an Archibus solutions provider, for over 20 years.  Archibus is a software product which is highly customizable and frequently utilized for facility management.  Over his long career, Mr. Lynass developed an expertise in the sales, contracts, and implementation of facilities management solutions, including multiple software solutions such as: Archibus, MicroView FM, FM Works and Maximo. Mr. Lynass originally created "PaceSetters" as a sole proprietors business supporting facilities solutions to large and small clientele. Through PaceSetters, Mr. Lynass has done business with several large entities across the United States of America, including business with the University of California Los Angeles Health System for over the last 12 years.  Mr. Lynass brought this wealth of knowledge, contract proposal and pricing/costing information, contacts, and experience with him into AFS..

120.    Mr. Lynass is well acquainted with Ms. Ray, as they have both known each other professionally for over 15 years.  In fact, in 2014, Mr. Lynass recruited Ms. Ray to work for Facility Management Partners, Inc. ("FMP"), the facilities management firm Mr. Lynass worked for at the time.    While working at FMP, Mr. Lynass identified multiple opportunities to springboard a company with a minority status, such as a woman-owned business, into a viable niche market within facilities management.    Mr. Lynass' prior work experience in Texas with Herman Miller and Steelcase – international furniture manufacturers/dealerships – had also given him experience working with woman-owned businesses.  Eventually, both Mr. Lynass and Ms. Ray expressed a desire to leave FMP, believing that that they could provide better facilities services as a team than with FMP.  Mr. Lynass discussed the potential opportunities for a woman-owned business with Ms. Ray over multiple lengthy phone calls.  Mr. Lynass and Ms. Ray decided to start a new venture to take advantage of the woman-owned business opportunities in facilities management software. They agreed to a 50-50 "handshake" deal in which Ms. Ray would be the face of the woman-owned company and be responsible for managing the use and implementation of the facilities software, while Mr. Lynass would be responsible for sales and project management.  Both would bring their prior knowledge, experience, and skills to the venture: Ms. Ray's experience with software end users and service providers, and Mr. Lynass with his experience with software end users and service providers, extensive contacts, facilities hardware, software, and sales expertise.  Although the governing documents of AFS gave Ms. Ray full control over the AFS on paper with 51% ownership interest (a requirement to be considered a woman-owned business), both parties understood that they were creating AFS for their mutual benefit and that they were on equal footing in the venture.

121.    It is very important to note that the operating agreement between Ms. Ray and Mr. Lynass specifically authorized Mr. Lynass to continue to operate PaceSetters.  Without this provision, Lynass would not have been able to participate in AFS, and PaceSetters would not have been able to assist AFS in order to allow it to survive or thrive as a business.

122.    Unfortunately, the fledgling AFS did not have the reputation, revenue, or demonstration of financial performance required to bid on large projects.  In order to show AFS to be a viable operation, Mr. Lynass assigned and transferred many of the larger contracts he earned under PaceSetters to AFS, particularly PaceSetter's contracts with UCLA Health.  In fact, for the first 5 years of AFS's existence, the UCLA Health contracts constituted more than 50% the revenue that AFS had, in excess of $1 million after costs.  This contributed to over $300,000 in cash in the bank in November of 2020.  But for the transfer of the UCLA Health contracts from PaceSetters, Ms. Ray would not have had any salary with AFS for 5 years.  Sharing the UCLA Health contracts with AFS necessarily resulted in Mr. Lynass taking a steep pay cut of 50% in order to keep AFS funded.  The loss of income directly impacted Mr. Lynass and his family, and also created some additional stresses, all of which Mr. Lynass was willing to endure because he believed AFS would be successful in the long run.

123.    From 2015 until 2020, Mr. Lynass, as the sales director of AFS, and Ms. Ray, as CEO of AFS, laid the groundwork for obtaining larger and larger contracts and contract vehicles using AFS's woman-owned status.  This included adding a Texas HUB ("historically underutilized business") certification.  Being a Texas HUB is highly advantageous for competing for Texas State contracts as 23.7% – 26% of the contracts from state and local governments are to be issued to HUBs.   However, during this period, due to the diversion of income from the UCLA Health contracts to AFS, Mr. Lynass, a resident of Santa Monica, California, faced a higher cost of living

and increased financial stress.  On October 21, 2015, reflected in signed Member Minutes, Mr. Lynass and Ms. Ray agreed to allow for a cost of living variance to their salaries.   Despite their agreement, Mr. Lynass's several requests to Ms. Ray for an increase in his salary to account for the increased cost-of-living in California were rebuked by insisting that she, as CEO, needed to make the most money out of AFS's owners in order to maintain the Women's Business Enterprise National Council certification for AFS.  This contention was not true, provided that the salaries were adjusted for cost-of-living and confirmed from Women's Business Enterprise National Council.

124.    In the 4th Quarter the end of 2020, after years of laying the groundwork, the work of Mr. Lynass as the sales director for AFS finally came to fruition.  AFS signed two additional large contracts for facilities management with Texas A&M AgriLife and Nestle USA.  In addition, multiple bids were submitted for the Texas Department of Public Safety that could only be serviced through the contract vehicle Texas DIR that AFS and only one other Archibus Dealer provided. Due to the impending success of AFS and much improved financial outlook, Mr. Lynass once again brought up the cost-of-living issue with Ms. Ray.

125.    The contracts for Texas A&M AgriLife and Nestle, USA were signed in September of 2020.   On November 10, 2020, after obtaining these valuable new contracts, Ms. Ray conspicuously called and held a board meeting of AFS.  Mr. Lynass was under the mistaken impression that Ms. Ray called the meeting to consider his cost-of-living increase request.  Instead, the meeting turned into Ms. Ray's coup of AFS, in which she unilaterally terminated Ms. Lynass's employment with AFS and also his position as a board member and manager, leaving Ms. Ray as the sole manager, board member, and officer of AFS.  Despite having received income from Mr. Lynass's UCLA Health contracts for years, Ms. Ray callously decided to use her power as the

controlling owner of AFS not only deprive Mr. Lynass of his livelihood and income to feed his family, but to attempt to cut him out of the impending success of AFS.

126.    Following the board meeting, Mr. Lynass, having no employment and minimal income to support his family, continued to operate PaceSetters.  PaceSetters was specifically exempted from competition from the company agreement of AFS and had continued to hold contracts with UCLA Health for over 12 years.

127.    After Mr. Lynass's termination, before Mr. Lynass had an opportunity to tell clients about his status with AFS,  <u>Ms. Ray sent an email to AFS clients and vendors stating that Mr. Lynass was no longer with AFS</u>.  Shortly thereafter, Mr. Lynass was contacted by many of his client contacts who had received this email.  One such contact was his main contact at UCLA Health, and when Mr. Lynass explained the situation with AFS, UCLA Health chose to award and renew its contracts with PaceSetters and chose to sever its ties with AFS.    UCLA Health had the right to terminate its contracts with AFS, and the contracts between AFS and UCLA Health were on an annual basis, terminating each year and requiring AFS to resubmit a proposal for a new software/service contract.  These contracts were not guaranteed, and renewal was not guaranteed. Despite the fact that Mr. Lynass was no longer part of AFS, Mr. Lynass nonetheless has negotiated for UCLA Health to pay to AFS over $88,000 in outstanding invoices.

128.    On November 17, 2020, Ms. Ray, through her attorneys, sent a threatening letter to Mr. Lynass speciously alleging that Mr. Lynass was in violation of non-competition and non-solicitation restrictions regarding AFS clients, including UCLA Health.  Ms. Ray also alleged that Mr. Lynass misappropriated trade secrets by his mere possession of an AFS laptop.  These allegations are disputed but it is indisputable that all of the sales contact information that AFS has was either originally generated by Mr. Lynass or is publicly known and accessible.

129.    On November 23, 2020, Mr. Lynass, through counsel, responded to Ms. Ray's letter. Mr. Lynass, having been left with no ability to meaningfully participate in AFS after Ms. Ray's actions, wished to ascertain the value of his 49% interest in AFS in order to seek a buyout. To that end, Mr. Lynass made a demand for the books and records of AFS to determine the value of AFS. Also, Mr. Lynass asked that there be a third-party appraisal conducted by AFS to determine the value of the company under the new contracts acquired. Mr. Lynass also requested a mediation at that time, as the company agreement of AFS required mediation before either party filed suit.

130.    However, not only was the request for mediation rebuffed, Michelle Ray filing the present suit in January of 2021 before mediating, Mr. Lynass's requests to see the books and records were met with inexcusable resistance. Instead of providing the books and records within the statutorily required 5 days from the date of the request, AFS and Ray produced partial records that all ended on September 30, 2020, before the large contracts with Nestle, USA and Texas A&M AgriLife were to produce income. On information and belief, this was a blatant attempt by Ray to undervalue AFS and to obfuscate the amount of income received by AFS after Defendant's termination as manager and employee.

131.    In addition, the AFS company agreement requires that distributions be made on an annual basis of all cash after contingent liabilities have been accounted for. Paragraph IV.C. of the company agreement of AFS states:

> "Distributions shall be issued, as directed by the Company's Treasurer or Assistant Treasurer, on an annual basis, based upon the Company's fiscal year. The distribution shall not exceed the remaining net cash of the Company after making appropriate provisions for the Company's ongoing and anticipatable liabilities and expenses. Each Member shall receive a percentage of the overall distribution that matches that member's percentage of Membership Interest in the Company. [emphasis added]"

132.    In the year 2020, AFS had at least $300,000 in excess of liabilities and payroll in its bank account, and none of that money has been distributed.  As Plaintiffs have been uncooperative in providing the books and records, Defendant is unable to ascertain how the excess cash of $300,000 was used and for what purpose.

133.    Due to the lack of cooperation, transparency, and illegal resistance to provide Mr. Lynass with information that he is entitled to review by statute as a member and owner of AFS, the appointment of a receiver for the purposes of making distributions is now necessary.  Otherwise, Mr. Lynass's rights to cash distributions will continue to be violated by Ms. Ray, who has determined that she can do whatever she wishes with AFS, regardless of the law and consequences.

## COUNT 1 – WRIT OF MANDAMUS

134.    Defendant incorporates the Facts as set our above as if verbatim.  In the alternative and in addition to, and without waiving any other cause of action, Defendant individually requests a Writ of Mandamus to be issued by the Court to compel Defendant AFS to produce the items Plaintiff is entitled to inspect under Tex. Bus. Orgs. Code §3.153 and Tex. Bus. Orgs. Code §101.502, including the following:

   a.  books and records of accounts;

   b.  minutes of the proceedings of the owners or members or governing authority of the filing entity and committees of the owners or members or governing authority of the filing entity;

   c.  all other information regarding the business, affairs, and financial condition of the company that is reasonable to examine and copy.

135.    Defendant delivered a written demand for the information described in Tex. Bus. Orgs. §101.502 to Plaintiff AFS.  Plaintiff AFS refused to submit or grant access to all the requested information within 5 days of the delivery of the demand, and therefore Defendant has now raised this claim to gain access to the information he is entitled to receive by statute.

136.    Accordingly, as the information has not been disclosed, as Plaintiff AFS continues to respond evasively to the requests for information, the Court should issue a Writ of Mandamus commanding AFS to produce the books and records that Defendant is entitled to view as a member of AFS.

## COUNT 2 – BREACH OF FORMAL FIDUCIARY DUTY

137.    Defendant incorporates the Facts stated above as if set out verbatim.  In the alternative and without waiving any other cause of action, Defendant, derivatively on behalf of AFS, alleges Breach of Formal Fiduciary Duty against Plaintiff Michelle Ray.

138.    Michelle Ray, as officer and manager of AFS, owed a fiduciary duty to AFS to act in its best interest.  However, Ray breached this duty when she terminated, without cause, Defendant's position as manager and as employee of AFS.

139.    Ray chose to terminate Defendant's employment despite the fact that:

   a.  Defendant was the main contact for the UCLA Health contract that AFS had,

   b.  PaceSetters, Defendant's sole proprietorship at the time, was still subcontracting additional work to AFS, and

   c.  UCLA Health comprised nearly 50% or more of the income for AFS from 2015 through 2020.

140.    Ray knew that Defendant, if terminated, would have no choice but to compete to retain UCLA Health as his client, and to stop subcontracting and diverting contracts to AFS which he had previously done for the benefit of AFS.

141.    AFS was harmed by this action because, as a direct result of Ray's actions, AFS lost UCLA Health as a customer and estimated income in the amount of $300,000 per year.  Additionally, Ray hired another person to do the job that was performed by Plaintiff and, upon information and belief, is paying that person significantly more per year than what she permitted Defendant to be paid, which are additional damages to AFS.

142.    Ray decided that she would attempt to avoid the loss of UCLA Health by filing a frivolous lawsuit, further impacting the revenue of AFS by incurring unnecessary attorney's fees.  AFS has been harmed by the incursion of unnecessary attorney's fees.

143.    In addition, Ray caused AFS not to respond to Defendant's demand for the books and records made under Tex. Bus. Orgs. §101.502s.  By not responding adequately to Defendant's demand, and instead engaging in  a concerted effort to present only misleading and limited information, Ray has further breached her fiduciary duty to AFS by causing AFS to incur unnecessary attorney's fees.

144.    Ray further breached her fiduciary duty to AFS by causing AFS to breach its contract with PaceSetters for services that were to be provided to UCLA Health and incurring additional unnecessary attorney's fees and breach of contract damages.  There was no excuse for the breach of this contract, and Ray deliberately has made AFS liable for the damages from the breach of contract.

145.    Ray further breached her fiduciary duty by maliciously and purposefully using her absolute authority over AFS to prevent distributions.  In the year 2020, AFS had over $300,000 in its bank

account, money that was not designated for any expenses or growth, but Ray refused to distribute the income and continues to allow it to accumulate.  On information and belief, Ray's purpose in not making distributions is to give herself the income through salary and deprive Defendant of his rightful share of income from the company.  The accumulation of cash in the bank account for AFS is further harming the value of AFS shares.

## COUNT 3 – BREACH OF INFORMAL FIDUCIARY

146.    Defendant incorporates the Facts as set our above as if verbatim.  In the alternative and without waiving any other cause of action, Defendant, individually, alleges a claim for Breach of Informal Fiduciary Duty against Plaintiff Ray.

147.    Defendant and Plaintiff Ray had known each other for 15 years prior to the formation of AFS, had previously worked together, and had a relationship of trust and confidence.  But for their relationship of trust and confidence, Defendant would not have entered into the business venture with Ray.  Plaintiff Ray owed Defendant an informal fiduciary duty and breached that duty when she usurped full control of AFS and terminated Plaintiff's employment.  Ray knew at the time that Defendant's main means of income was AFS, yet she callously decided, without any warning or consultation, to terminate Defendant's employment to keep all of the benefits of AFS for herself.  Ray also breached her fiduciary duty by refusing to make any distributions of excess cash and profits held by AFS to its members, including Defendant.

148.    Plaintiff Ray's malicious and intentional breach of her fiduciary duty damaged Defendant by costing him his livelihood, causing him mental anguish and stresses at home, and further causing him mental anguish by causing him to answer the frivolous and baseless allegations made against him in this lawsuit.

## COUNT 4 – BREACH OF COMPANY AGREEMENT

149.    Defendant incorporates the Facts set out above as if verbatim.  In the alternative and in addition to, and without waiving any other cause of action, Defendant, both individually and derivatively on behalf of AFS, alleges Breach of the AFS Company Agreement against Plaintiff Ray and Plaintiff AFS.

150.    The AFS Company Agreement requires that AFS make a distribution to its members every year, after making provisions for "ongoing and anticipatable[sic] liabilities and expenses."  In 2020, AFS had accrued over $300,000 in cash reserves after accounting for all ongoing anticipated liabilities and expenses, and that money should have been distributed to its members.

151.    Defendant Ray, as Treasurer, failed to make the required distributions for Fiscal Year 2020 and breached the AFS Company Agreement.  Defendant should have received a distribution of at least $147,000 from AFS for Fiscal Year 2020.

152.    Defendant was damaged by the breach of contract by AFS and Ray in the amount of $147,000.

153.    In addition, Plaintiff AFS and Plaintiff Ray breached the AFS Company Agreement by failing to submit the controversy between the parties to mediation before resorting to litigation. Defendant was damaged by the failure to mediate by incurring unnecessary attorney's fees and court costs.

## COUNT 5 – BREACH OF CONTRACT WITH PACESETTERS

154.    Defendant incorporates the Facts set out above as if verbatim.  In the alternative and in addition to, and without waiving any other cause of action, Defendant alleges in his individual capacity Breach of Contract against Plaintiff AFS.

155.    AFS entered into a contract with Defendant Lynass, d/b/a PaceSetters, to provide services on behalf of UCLA Health.  However, after terminating Defendant, AFS ceased providing services and breached its contract with PaceSetters.  The term of the contract requires AFS to provide services to PaceSetters for UCLA Health through the end of 2022 for a monthly charge of $1,000.

156.    Defendant/PaceSetters had to mitigate its damages by  performing the work that AFS refused to perform.  However, the value of the work performed is the contract price that AFS charged.

157.    Defendant was damaged by AFS's breach of contract in the amount of $28,000.

## COUNT 6 – REQUEST FOR APPOINTMENT OF RECEIVER

158.    Defendant incorporates the Facts as set our above as if verbatim.  In the alternative and without waiving any other cause of action, Defendant, individually as a member of AFS, requests the appointment of a receiver for AFS under Tex. Bus. Orgs. Code §11.404.

159.    The sole governing person for AFS, Plaintiff Ray, has engaged in oppressive conduct and exercised control over AFS in a way to attempt to prevent Defendant from receiving any of the benefits of his ownership interest.  On information and belief, Plaintiff Ray intends to spend all of the excess cash in AFS instead of distributing it, including increasing her own salary beyond what is reasonable and necessary, in order to prevent Defendant from receiving his share of distributions.  The appointment of a receiver is necessary in order to preserve the interest of Defendant and prevent Ray from wasting the assets and business of AFS.

## COUNT 7 – DECLARATORY JUDGMENT

160.    Defendant incorporates the Facts recited above as if set out verbatim.  In the alternative and without waiving any other cause of action, Defendant requests a Declaratory Judgment.

161.    Defendant requests the Court grant him a declaration in the following:

    a.   Paragraph VIII.B. of the AFS Company Agreement exempts Defendant Lynass, as PaceSetters, from any prohibition from competition with AFS;

    b.   Paragraph VI.C. of the AFS Company Agreement requires distributions to be made on an annual basis of excess cash after accounting for anticipated liabilities and expenses;

    c.   There are no non-solicitation, non-competition, or non-disclosure agreements between Defendant Lynass and AFS;

    d.   UCLA Health System was a client of PaceSetters and Lynass prior to the formation of AFS, and all information regarding UCLA Health System was known to Lynass prior to the formation of AFS; and

    e.   There is no agreement to prevent Defendant Lynass from competing with AFS when he is no longer an officer, board member, or employee of AFS.

## ATTORNEY'S FEES

162.    Defendant is entitled to recover reasonable and necessary attorney's fees based upon Tex. Civ. Prac. & Rem. Code Ann. §38.001(8).

163.    Defendant is also entitled to reasonable and necessary attorney's fees and costs of court based upon Tex. Bus. & Comm. Code Ann. §101.503.

164.    Defendant may also receive reasonable and necessary attorney's fees and costs of court based upon Tex. Civ. Prac. & Rem. Code Ann. §37.009.

## EXEMPLARY DAMAGES

165.    Defendant additionally requests exemplary damages under Tex. Civ. Prac. & Rem. Code §41.003 and at common law for the claims of breach of fiduciary duty against Michelle Ray.

## DIRECT ACTION

166.    Defendant additionally requests that Defendant's counterclaims made derivatively on behalf of AFS be treated as a direct action by Defendant, and that any recovery of damages in this proceeding be paid directly to Defendant in accordance with Tex. Bus. Orgs. Code §101.463(c).

## JURY DEMAND

167.    Defendant demands a jury trial and tenders the appropriate fee with his counterclaims.

## CONDITIONS PRECEDENT

168.    All conditions precedent to Defendant's claims for relief have been performed and have occurred or have been excused.

## PRAYER

169.    For these reasons, Defendant asks that the Court that Defendant be awarded a judgment against the Plaintiffs for the following:

      a.   A declaratory judgment as stated above;

      b.   Actual damages;

      c.   Prejudgment and post-judgment interest;

      d.   Court costs;

      e.   Reasonable and necessary attorney's fees;

      f.   Exemplary damages; and

      g.   All other relief to which Defendant is entitled.

Respectfully submitted,

THE WEISBLATT LAW FIRM, PLLC


By:  */s/ Andrew Weisblatt*
Andrew D. Weisblatt
State Bar No. 00785206
adw@weisblattlaw.com
Sameer Mandke
State Bar No. 24065670
sm@weisblattlaw.com
2312 Katy Fort Bend Rd.
Katy, Texas 77493
Tel: 713.666.1981
Fax: 832.415.0215

ATTORNEYS FOR DEFENDANT
PATRICK LYNASS

## CERTIFICATE OF SERVICE

The undersigned counsel certified that on January 20, 2022, a true and correct copy of the foregoing was served on all parties through ECF, and upon the following:

### *Via* EMAIL and ECF

VETHAN LAW FIRM, P.C.
Charles M.R. Vethan
Texas Bar No. 00791852
Email: cvethan@vethanlaw.com
Cameron P. Weir
Texas Bar No. 24088616
Email: cweir@vethanlaw.com
Joeseph Lanza
Texas Bar No. 24062677
Email: scostello@vethanlaw.com
Two Memorial Way Plaza
820 Gessner Road, Suite 1510
Houston, Texas 77024
Telephone: (713) 526-2222
Facsimile: (713) 526-2230
ATTORNEYS FOR PLAINTIFFS
MICHELLE RAY and
ABSOLUTE FACILITY SOLUTIONS, LLC

*/s/Sameer Mandke*
Sameer Mandke