## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **Michelle Ray, Absolute Facility** | § | |
| **Solutions, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **No.  1:21-cv-0020-DH** |
| **v.** | § | |
| | § | |
| **Patrick Lynass,** | § | |
| *Defendant* | § | |
| | § | |

## ORDER

Before the Court is Defendant Patrick Lynass's Motion for Partial Summary Judgment on Lynass's Counterclaims, Dkt. 47; Motion for Summary Judgment on Plaintiffs' Causes of Action, Dkt. 48; and all related briefing. After reviewing these filings, and the relevant case law, the Court denies Lynass's Motion for Partial Summary Judgment, Dkt. 47, and grants in part and denies in part Lynass's Motion for Summary Judgment, Dkt. 48. In particular, the Court denies both of Lynass's motions in all respects, except as to AFS's now-abandoned anti-cybersquatting claim.

## I.      BACKGROUND

Plaintiffs Michelle Ray and Absolute Facility Solutions, LLC ("AFS") bring this lawsuit against Lynass based on his alleged misappropriation of AFS's property and confidential information. Dkt. 18, at 1-2. In 2015, Lynass and Ray co-founded AFS— a Texas-based company specializing in information management consulting—and executed a limited liability company agreement. *Id.* at 4. Plaintiffs allege that from AFS's inception, Lynass "failed to close a single deal from any lead derived on his

own" as director of sales. *Id.* at 7. In November 2020, Absolute voted to terminate Lynass as director of sales and treasurer of the company. *Id.* at 8.

Upon termination, Lynass was required to return AFS's property, assets, and confidential information. *Id.* Yet Plaintiffs allege that upon termination from his position as sales director at AFS, Lynass misappropriated "company property and confidential information including sensitive financials, customer and pricing information, future company plans, and has converted them for his own separate use in interstate commerce." *Id.* at 1. Plaintiffs further allege that Lynass has used this information to thwart AFS's relationship with "employees, contracts, and clients." *Id.* at 2, 7-8. At issue, in particular, is AFS's contract with UCLA Health, which Plaintiffs claim Lynass usurped. *Id.* at 7-8.

Plaintiffs brought ten causes of action against Lynass for violations of the Anti-Cybersquatting Consumer Protection Act, the Texas Uniform Trade Secrets Act, and the Defend Trade Secrets Act, as well as for breach of fiduciary duty, conversion, tortious interference, and breach of contract. *Id.* at 11-24. Lynass brings counterclaims for breach of formal fiduciary duty, breach of informal fiduciary duty, and breach of the Company Agreement, and seeks the appointment of a receiver as well as declaratory judgment as to certain aspects of the parties' Company Agreement and the status of client accounts held by AFS. Dkt. 30, at 41-47.

Lynass moves for summary judgment on all ten of AFS's causes of action and for partial summary judgment on his claims for breach of the Company Agreement,

2

breach of fiduciary duty and informal fiduciary duty, and his request for declaratory judgment. Dkts. 48, at 3-13; 47, at 2-12.

## II.      LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion

for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    DISCUSSION

### A.    Plaintiffs' Causes of Action

#### 1.    Count 1 (AFS): Anti-Cyber Squatting Consumer Protection Act ("ACPA") claim

AFS brings a claim for violation of the ACPA related to Lynass's alleged refusal to release AFS's domain name account to AFS and attempt to "blackmail AFS over the domain name, [by] offering to sell it back to AFS for a fee." Dkt. 18, at 13. To prevail on its ACPA claim, AFS must show (1) registration of a domain name, (2) that was "identical or confusingly similar to" a mark that was distinctive at the time of registration, and (3) "bad faith intent" at the time of registration. *See* 15 U.S.C. § 1125(d)(1).

Lynass argues that he is entitled to summary judgment on AFS's ACPA claim because AFS cannot show the existence of a distinctive mark. Dkt. 48, at 3-4. AFS responds that it "abandons this claim." Dkt. 53, at 12. When a party fails to pursue a

claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim when she failed to defend claim in response to motion to dismiss); *see also Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived") (citation omitted).

The Court grants Lynass's motion for summary judgment as to the ACPA claim.

### 2.    Count 2 (AFS): Defend Trade Secrets Act ("DTSA") claim

AFS brings a claim under the DTSA arguing that Lynass misappropriated trade secrets known only to managers at AFS such as customer software customizations and preferences, customer and supplier lists, and pricing data. Dkt. 18, at 14. AFS states these trade secrets are contained on "laptops still in Lynass' attorney's possession." *Id.* at 14.

To state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1); *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018). The DTSA defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied

consent by a person who … used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839.

Lynass argues that he is entitled to summary judgment on Plaintiffs' DTSA claim because he surrendered the laptops containing the trade secrets at issue, and thus, he has been unable to "use" the trade secrets within the meaning of the DTSA since at least June 7, 2021 (the date AFS filed its complaint and Lynass surrendered the laptops). Dkt. 48, at 6. Lynass further argues that AFS has no evidence that he "used the information it alleges is protected under the DTSA." *Id.* at 5. AFS responds that there is a fact issue as to whether Lynass could have used its trade secrets because Lynass returned the laptops eight months after he was formally terminated and acquired alleged AFS's UCLA Health account "in December 2020, seven months before he turned the laptops over to his attorney." Dkt. 53, at 14. According to this timeline, Lynass would have been in possession of the laptops as he pursued AFS's UCLA Health account.

In support of its position that Lynass was in possession of the laptops when he acquired AFS business and could have used the trade secrets within the meaning of the DTSA, AFS presents a declaration from co-plaintiff Michelle Ray, and minutes of the November 10, 2020, Special Board Meeting. *See* Dkts. 54-1; 54-7. There is also evidence in the record demonstrating when Lynass acquired the UCLA Health account. *See* Dkt. 61-1, at 3 (Declaration of Michael Aguilar, explaining that UCLA Health terminated its contract with AFS in favor of Lynass's company PaceSetters sometime after Lynass was formally terminated from AFS). The undersigned agrees

that Lynass's summary judgment argument that "he cannot have misappropriated trade secrets because the laptop was in the possession of his attorney is fatally flawed" because "there is an eight-month window in which [he was in possession of the laptops] and could have copied and/or used the information." Dkt. 53, at 14. At a minimum, Lynass's apparent possession of the laptops during the period during which his company, PaceSetters, acquired the UCLA Health account creates a fact issue as to whether Lynass could have acquired and used AFS trade secrets in violation of the DTSA.

The Court denies Lynass's motion for summary judgment on AFS's DTSA claim.

### 3.       Count 3 (AFS): Computer Fraud and Abuse Act ("CFAA") claim

AFS brings a claim under the CFAA alleging that Lynass denied AFS access to AFS's domain name, intentionally accessed the domain name without authorization or exceeded authorization, and accessed proprietary AFS information while withholding his company computer. Dkt. 18, at 17. To succeed on its CFAA claim AFS must prove that Lynass (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and (3) thereby obtained information, (4) from a "protected computer," and (5) there was a loss of at least $5,000 to one or more persons. *Absolute Energy Sols., LLC v. Trosclair*, No. 13-3358, 2014 WL 360503, at *2 (S.D. Tex. Feb. 3, 2014).

Lynass moves for summary judgment on AFS's CFAA claim arguing that the domain name at issue belonged to Lynass and was purchased by him well before AFS

existed, and that he retained the right to use it, and change its password. Dkt. 48, at 6. AFS responds that there is a fact issue as to whether AFS or Lynass owned the domain because Lynass's registration of the domain name was part of his initial capital contribution to AFS in exchange for his membership interest. Dkt. 53, at 12. AFS also cites evidence that it paid for the renewal of the domain, hosted its webpage and email server under the domain name, and that it is reasonable to infer that the parties intended for AFS to ultimately own the domain. *Id.* at 13. Lynass responds that the partnership agreement was amended such that the domain name was not part of his capital contribution. Dkt 61, at 4.

The question dispositive of whether Lynass is entitled to summary judgment on AFS's CFAA claim is whether there is a fact issue as to Lynass's ownership and access authorization with respect to the domain name. Determining ownership and access authorization requires a closer look at the relevant partnership agreement and any amendments.

As to the parties' initial contributions, the 2015 partnership agreement states:

Each member shall make an Initial Contribution to the Company. The Initial Contributions of each shall be described in Attachment A, Initial Contributions of the Members.

No Member shall be entitled to interest on their Initial Contribution. Except as expressly provided by this Agreement, or as required by law, no Member shall have any right to demand or receive the return of their Initial Contribution.

Dkt. 54-3, at 2.

Attachment A, outlining the initial contribution of the members states:

Michelle Ray
        Contribution:
        Operations – Controls
        Project Management
        Technical Knowledge
        15+ years with practical use of ARCHIBUS Software, as an End-User and Service provider.
        Initial setup fees and cash (est. $600 fees, $500 cash)

Patrick Lynass
        Contribution:
        Sales Management
        Project Management
        Technical Knowledge
        18+ years with practical use of ARCHIBUS Software, as an End-User and Service provider.
        Go Daddy account setup for Office 365 and website hosting
        QuickBooks Premier Desktop – latest version
        Initial Business Cards
        Monitor for Main Office

*Id.* at 13.

In 2016, the parties executed Amendment #3 of the partnership agreement which purportedly altered Attachment A. Dkt. 53, at 12. The 2016 version of Attachment A states:

ATTACHMENT A
Initial Contributions of the Members

The Contributions of the Members of Absolute Facility Solutions, LLC are
as follows:

Michelle Ray Contribution:
Experience:
        Sales/New Business Development – 4+ years
        Operations/Project Controls – 2+ years
        Personnel, Business & Financial Management – 12+ years
        Technical Expertise – Implementation/Development
        Subject Matter Expertise – 90% of product
Rackspace Hosting services (up to $200/mo.)
Financial Contribution:  $3,076.04

Patrick Lynass Contribution:
Experience:
        Sales/New Business Development – 17+ years
        Sales Management – 14+ years
        Personnel, Business & Financial Management – 14+ years
        Technical Knowledge – Application – Power User/End User
        Subject Matter Expertise – 65% of product
Financial Contribution:  $2,418.34

Dkt. 54-6, at 1.

While it is true that 2016's Attachment A makes no mention of the "Go Daddy Account setup for Office 365 and website hosting," the existence of Amendment #3 does not conclusively establish that the domain name was no longer part of Lynass's capital contribution, and that Lynass could not have abused the domain name because he owned it. The section of the partnership agreement governing initial contributions (which remains unchanged by Amendment #3) states: "[e]xcept as expressly provided by this Agreement, or as required by law, no Member shall have any right to demand or receive the return of their Initial Contribution." Dkt. 54-3, at 2.

The presence of this clause creates a fact issue as to whether Lynass could have retained or revoked ownership of the domain once he committed to set up the domain

as part of his initial capital contribution, after which point AFS would have owned the domain. Notwithstanding the 2016 amendment to Attachment A, it's possible that everything contributed by the members as described in the original 2015 Attachment A remained AFS's property.

Lynass has not met his burden of establishing that there is no genuine issue of material fact as to each element of AFS's CFAA claim. The Court therefore denies his motion for summary judgment with respect to the CFAA claim.

4.      Count 4 (AFS): Texas Uniform Trade Secrets Act ("TUTSA") claim

AFS brings a claim under TUTSA arguing that Lynass misappropriated trade secrets such as customer and supplier information, business operation methods, and pricing strategies. Dkt. 18, at 18. AFS states "Lynass had a position of trust and confidence, had a duty to maintain the secrecy of AFS's trade secrets, and to not use them to his own profit [and] misappropriated and used the trade secrets for his own ends." *Id.* To prevail on a claim for trade secret misappropriation under TUTSA, AFS must establish (1) the existence of a trade secret and (2) misappropriation. Tex. Civ. Prac. & Rem. Code §§ 134A.002-134A.003; 18 U.S.C. § 1831, et seq.; *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 702 (W.D. Tex. 2019).

Lynass argues that he is entitled to summary judgment on AFS's TUTSA claim because the customer lists and software at issue are provided by third parties, and thus do not qualify as trade secrets because they do not belong to AFS. Dkt. 48, at 7. AFS responds, supported by a declaration from Ray, that the customer lists are "exclusive," and that even if the software is provided by a third party, which Lynass

hasn't proven, it is the software customizations, not merely the software, that AFS claims is a trade secret. Dkt. 53, at 18. Lynass shifts his summary judgment motion argument in his reply, focusing instead on the misappropriation prong of AFS's TUTSA claim. Dkt. 61, at 7. Lynass argues that AFS has not offered any evidence that he used or disclosed any trade secrets or produced evidence of how the alleged misappropriation damaged AFS. Dkt. 61, at 7.

At this stage, Lynass, as the movant, bears the initial burden of providing the Court with a legal basis for his motion. Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 323. Lynass must also identify portions of the record which he alleges demonstrate the absence of a genuine issue of material fact as to whether he used or disclosed the trade secrets at issue and whether AFS suffered injury. *Id.*

Lynass's proffered evidence as to AFS's TUTSA claim is a declaration of Michael Aguilar, a systems manager at UCLA Health. Dkt. 61, at 7. The declaration does not establish that Lynass did not use or disclose trade secrets, nor that AFS did not suffer an injury. Rather, the declaration explains UCLA Health's reasoning for terminating its contract with AFS in favor of PaceSetters, including PaceSetters' geographical proximity to UCLA, UCLA Health's previous relationship with PaceSetters, and PaceSetters' "sole source justification" qualifications. Dkt. 61-1, at 3. While the declaration paints a compelling picture as to UCLA Health's motivation for favoring PaceSetters after Lynass left AFS, it does not conclusively establish that Lynass did not use AFS's trade secrets in acquiring AFS business, nor that AFS was not injured by Lynass's alleged use of trade secrets. It also does not establish that

Lynass did not use the trade secrets at issue, such as customer lists and software preferences/customizations, in pursuing other former clients of AFS.

Lynass has not met his burden of demonstrating the absence of a genuine issue of material fact as to whether he used or disclosed the trade secrets at issue and whether AFS suffered injury. Accordingly, the burden has not shifted to AFS to come forward with competent summary judgment evidence of the existence of a genuine issue of material fact. The Court therefore denies Lynass's motion for summary judgment with respect to AFS's TUTSA claim.

5.    Count 5 and 6 (AFS and Ray): Breach of Fiduciary Duty claim

AFS and Ray bring a claim for breach of fiduciary duty imposed by the Company Agreement which required Lynass to "act with integrity of the strictest kind, deal fairly and honestly with AFS, and to act in obedience to the best interests of AFS." Dkt. 18, at 19. Plaintiffs' breach of fiduciary duty claim relates to Lynass's duty to not compete with AFS by using confidential trade secrets in acquiring the UCLA Health account, as well as Lynass's coopting of AFS's domain name and domain account information. Dkt. 18, at 19-21. To prove a breach of fiduciary duty, Plaintiffs must show (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach results in injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

Lynass moves for summary judgment on Plaintiffs' claim for breach of fiduciary duty arguing that he owned the domain name at the pertinent times and

transferred ownership of AFS's domain name after the commencement of this lawsuit. Dkt. 48, at 8. The undersigned has already found that there is a fact issue as to Lynass's ownership of the domain name after it became part of his initial capital contribution. *See supra* Part III.A.3. Lynass's summary judgment argument that he owned the domain name and could not have breached his fiduciary duty by coopting it is therefore unavailing.

Lynass next argues that "at the time of [his] alleged coopting of the domain name, he was only a Member of AFS and was not a manager or Officer" and under the Company Agreement

> [t]he members shall have no fiduciary duties whatsoever, whether to each other or to the Company, unless that Member is a Manager or an officer of the Company, in which instance they shall owe only the respective fiduciary duties of a Manager or Officer as applicable.

Dkt. 48, at 12 (citing the Company Agreement).

Lynass contends that after his termination he was not a manager and owed no fiduciary duties to Plaintiffs. *Id.* However, as Plaintiffs explain, "AFS's Certificate of Formation plainly shows that as of the date of formation, September 16, 2015, the company was to be manager managed and that [Lynass] and Michelle were governing persons." Dkt. 52, at 19 (citing AFS's Certificate of Formation). Plaintiffs thus respond that Lynass remained a manager (and member) of AFS and owed fiduciary duties even after he was terminated as Director of Sales and Treasurer on November 10, 2020. *Id.*

The undersigned finds that the Company Agreement and Certificate of Formation create a fact issue as to the first element of Plaintiffs' breach of fiduciary

duty claim—whether there was a fiduciary duty between the parties. Accordingly, the Court denies Lynass's motion for summary judgment as to Plaintiffs' breach of fiduciary duty claim.

### 6.    Count 7 (AFS): Conversion

AFS brings a claim for conversion for Lynass's alleged wrongful possession of AFS laptops. Dkt. 18, at 22. AFS alleges that Lynass was wrongfully in possession of AFS's laptops since his termination in November 2020. *Id.* To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 485 (Tex. App.—Dallas 2008, no pet.). The plaintiff also must establish it was injured by the conversion. *United Mobile Networks, LP. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam).

Lynass argues that he is entitled to summary judgment on AFS's conversion claim because he had a right to remove personal information on the laptops after his termination, and AFS is at fault for the delay in the return of the laptops because it did not immediately respond to his request that AFS pay for return shipment costs. Dkt. 48, at 9. Lynass states that after the commencement of this suit, the parties "entered into an agreement for the orderly return of the laptops, and LYNASS

surrendered the laptops to his attorneys in compliance with the agreement." *Id.* He states that because he is no longer in possession of the laptops, AFS's conversion claim must fail. *Id.*

AFS responds with evidence that Lynass's employment was terminated on November 10, 2020, and argues that by Lynass's own admission he did not turn the laptops over to his attorneys until June 7, 2021. Dkt. 52, at 20. The undersigned finds that the evidence in the record—establishing that there was an eight-month period between Lynass's termination and return of the laptops—creates a fact issue as to whether Lynass's possession of the laptops was inconsistent with AFS's ownership of the laptops. The Court therefore denies Lynass's motion for summary judgment as to AFS's conversion claim.

### 7.    Count 8: (AFS) Tortious Interference claim

AFS brings a claim for tortious interference for Lynass's alleged "aggressive and unlawful measures to interfere with AFS's business clients, contracts, and goodwill." Dkt. 18, at 22. As alleged in the complaint Lynass "contacted one of AFS's key clients in southern California and falsely suggested (a) that AFS's employees now work for Lynass and his sole proprietorship PaceSetters, (b) that Lynass is in a better position than AFS to provide service to the customers, and (c) that the client should cancel their contract with AFS" in favor of Lynass. *Id.* Under Texas law, tortious interference with contract occurs when: (1) the plaintiff has a valid contract, (2) the defendant willfully and intentionally interfered with the contract, (3) the interference

proximately caused the plaintiff's injury, and (4) the plaintiff incurred actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

Lynass contends that he is entitled to summary judgment on AFS's tortious interference claim related to the UCLA Health account, arguing (1) that his company PaceSetters held the account first; (2) that he brought the account into the AFS partnership; (3) that his communications with UCLA Health predates the formation of AFS; and (4) that the non-compete provisions of his contract with AFS excepts PaceSetters' dealings with UCLA Health. Dkt. 48, at 10-11. Lynass also alleges that Ray's "self-serving declaration" that he interfered with AFS's contract with UCLA Health is insufficient to create a fact issue "as [Ray] has no personal knowledge of the alleged communications between Lynass and UCLA." Dkt. 61, at 8.

Lynass has not met his burden as the movant to show that there is no evidence to support AFS's tortious interference claim. The parties agree that AFS had a valid contract with UCLA Health, that Lynass communicated with UCLA Health after his termination from AFS, and that PaceSetters took over the UCLA Health account. Dkts. 56-1, at 10 (Declaration of Ray stating AFS had a contract with UCLA and that Lynass contacted UCLA Health after his termination); 56-15 (AFS Contract with UCLA); 62-4, at 6 (Declaration of Lynass stating a representative from UCLA Health contacted him after his termination and "[asked him] and [his] business PaceSetters to continue supporting UCLA Health"); 61-1, at 3 (Declaration of Michael Aguiar from UCLA Health stating "After confirming that PaceSetters was capable of supporting

UCLA Health, we decided to terminate the UCLA Health contract with AFS in favor of PaceSetters").[1]

The undersigned finds that Lynass has failed to meet his burden to show that there is no genuine issue of material fact as to the elements of AFS's tortious interference claim. The Court denies Lynass's motion as to this claim.

        8.    Count 9 (AFS): Breach of Contract

AFS brings a claim for breach of the Company Agreement alleging that the Company Agreement "specifically obligated Lynass to set up the Go Daddy domain account and website hosting for the benefit of the Company as part of his contribution for gaining membership units" and that he breached this agreement by refusing to share the account information with AFS upon his termination as Director of Sales, a role separate and apart from his AFS membership. Dkt. 18, at 23. "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex. App— Houston [1st Dist.], 2001)

Lynass argues that he is entitled to summary judgment because AFS cannot meet the breach element of its claim because his obligation under the Company

---

[1] Notably, Lynass brings a breach of fiduciary counterclaim alleging that Ray's breach of fiduciary duty in handling his termination resulted in PaceSetters' acquisition of the UCLA Health account of costing AFS (of which Lynass is still a member) approximately $300,000 in revenue. Dkt. 30, at 137-141.

Agreement to set up a website for AFS as part of his contribution to the partnership was superseded by a later amendment. Dkt. 48, at 11-12.

As the Court has already found, there is a fact issue as to the later amendment and how it affects Lynass's capital contributions, including his obligation to set up the domain name account. *See supra* Part III.A.3. The Court therefore denies Lynass's motion for summary judgment as to AFS's alleged breach of the Company Agreement.

### 9.   Count 10 (Ray): Fraud

Ray brings a claim for fraud against Lynass alleging that he knowingly made fraudulent representations to Ray concerning his "knowledge, skill, and experience to greatly expand their business […] to operate the Archibus software." Dkt. 18, at 24. Ray claims Lynass made these representations with the intent to "induce [Ray] to form AFS making [Lynass] a managing member and into executing the Company Agreement." *Id.* To prove common law fraud Ray must establish that Lynass knowingly or recklessly made material representations that he intended be acted upon and were in fact acted upon to Ray's detriment. *In re Deepwater Horizon*, 857 F.3d 246, 249 (5th Cir. 2017).

Lynass moves for summary judgment on Ray's common law fraud claim arguing that the representations at issue were made in August 2015 and that the statute of limitations period of four years expired in September 2019. Dkt. 48, at 13. Lynass further argues that Ray has not pleaded the so-called "discovery rule" which

would set the running of the statute of limitations to the time at which Ray discovered the statements were fraudulent. *Id.*[2]

In Texas, a claim for fraud accrues when the fraud is discovered or could have been discovered through the exercise of due diligence. *Computer Assocs. Int'l v. Altai*, 918 S.W.2d 453, 455-56 (Tex. 1994) ("limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence"). "While Texas law … suppl[ies] the applicable statute of limitations in this diversity case, 'federal law governs the pleading requirements of a case in federal court.'" *Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, 1425 (5th Cir. 1992) (quoting *Simpson v. James,* 903 F.2d 372, 375 (5th Cir. 1990)). The discovery rule need not be specifically pleaded in federal court. *Id.* "[U]nder Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based." *Id.* (quoting *Simpson,* 903 F.2d at 375) (quotations omitted).

Here, the facts pleaded by Ray gave sufficient notice to Lynass that Ray might assert that the discovery rule applies. *See* Dkt. 18, at 23, 7 (alleging Lynass made representations in 2015 that "he had the knowledge, skill, and experience to greatly expand [AFS's] business" yet, in August 2019 he failed to do so when he "was

---

[2] Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. When applied, the discovery rule "defer[s] accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *TIG Ins. Co. v. Aon Re, Inc.,* 521 F.3d 351, 357 (5th Cir. 2008).

supposed to contact … prospective customers for AFS but failed to convert any leads."). Lynass's arguments as to Ray's failure to plead the discovery rule therefore fails. He makes no other summary judgment arguments as to this claim. The Court denies Lynass's motion for summary judgment as to Ray's fraud claim.

### B.  Lynass's Counterclaims

    1.  Count 4 (Against AFS and Ray): Breach of Company Agreement

Lynass brings a counterclaim against AFS and Ray for breach of the Company Agreement. Dkt. 30, at 34. Lynass alleges that the company agreement "requires that AFS make a distribution to its members every year." *Id.* Ray states that AFS accrued net cash reserves of $300,000 in 2020 and that AFS and Ray breached the Company Agreement by failing to pay him $147,000 as a distribution. *Id.* Lynass contends that AFS and Ray also breached the Company Agreement when they failed to submit the present controversy to mediation before resorting to litigation. *Id.* "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App—Houston [1st Dist.] 2001, no pet.). To prevail on his summary judgment motion as to his breach of contract claim, Lynass must demonstrate that there are no issues of material fact as to each of the elements of his claim. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

a.    Breach related to distributions

In support of his claim for breach of the Company Agreement related to distributions, Lynass presents the section of the Company Agreement in the record pertaining to "Distributions." Dkt. 47, at 4. The section reads:

> Distributions shall be issued, as directed by the Company's Treasurer or Assistant Treasurer, on an annual basis, based upon the Company's fiscal year. The distribution shall not exceed the remaining net cash of the Company after making appropriate provisions for the Company's ongoing and anticipated liabilities and expenses. Each Member shall receive a percentage of Membership Interest in the Company.

Dkt. 47-1, at 4.

Lynass also cites his declaration and the termination letter AFS sent him, though neither document addresses distributions. Dkts. 47-4, at 2; 47-2, at 2-4. Lynass further claims that Exhibit 5 supports his contention that "[i]n 2022, Defendant's K-1 tax form from AFS reflected AFS experienced a loss of $172,850.00. Defendant's K-1 tax form from AFS for 2021 reflected AFS only has a net income of $53,825.00." Dkt. 47, at 4. However, Exhibit 5 to Lynass's motion is his proposed order, not AFS's tax forms. Lynass does not explain how the tax form figures relate to his distributions claim, and the Court does not have a duty to sift through the record in search of evidence to support his motion. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

While the record demonstrates Ray and AFS may have been under an obligation to make distributions, Lynass has not met his burden of demonstrating the performance, breach, and damages elements of his claim. The Court denies Lynass's motion with respect to his breach of company agreement claim.

b.     Breach related to failure to mediate

In support of his motion for summary judgment on his breach of contract claim as related to the failure to mediate, Lynass presents the section of the Company Agreement in the record pertaining to "Settling Disputes." Dkt. 47, at 6. The section reads:

> All members agree to enter into mediation before filing suit against any other Member or the Company from any dispute arising from this Agreement or Company. Members agree to attend one session of mediation before filing suit. If any Member does not attend mediation, or the dispute is not settled after one session of mediation, the Members are free to file suit. Any lawsuits will be under the jurisdiction of the state of Texas.

Dkt. 47-1, at 12.

Ray claims that "on or about November 23, 2020, through counsel, Defendant requested that Plaintiff Ray engage in mediation pursuant to the Company Agreement. Plaintiff Ray refused Defendant's demand for mediation and filed the instant lawsuit on January 6, 2021, in breach of the Company Agreement which required her to attend mediation prior to filing this lawsuit." Dkt. 47, at 6. Ray's contention concerning his request for mediation is supported by his declaration. *See* Dkt. 47-2, at 2 (stating "On November 23, 2020 … I also requested mediation, as the company agreement of AFS required mediation before either party filed suit"; "my request for mediation was rebuffed"; "Ray filed suit on January 6, 2021."). Lynass also includes a November 23, 2020, demand letter from his attorney of record, Andrew Weisblatt, to AFS and Ray which Lynass sent the same day he alleges he requested mediation. *See* Dkt. 47-3, at 2. However, the letter does not mention mediation. *Id.* If

Lynass requested mediation via another method, documentation supporting that contention is not in the record.

Ray responds that she "did not fail to mediate"; rather, "the parties mediated and were unable to reach a resolution." Dkt. 56, at 17. Ray claims the fact "that mediation did not occur as quickly as Lynass wanted does not equal a breach of the security agreement." *Id.* In support of her response Ray includes a letter from her attorney to Lynass's dated December 4, 2020, stating "with regard to mediation and settlement negotiations, we are still considering your proposals." Dkt. 56-12, at 1. She also includes a declaration stating, "the parties mediated this matter on March 30, 2021, but were unable to reach a resolution." Dkt. 56-1, at 12. Lynass replies with a supplemental declaration stating, "Plaintiff Ray and I mediated our company AFS on April 8, 2021." Dkt. 62-4, at 4. While the parties don't appear to agree on when exactly mediation occurred (and there is little in the record to establish that Lynass requested mediation), the record does establish that attempts at mediation, whether on March 30, 2021, or April 8, 2021, were made after Ray filed suit on January 6, 2021.

Based on the evidence in the record the undersigned finds that Lynass has established the existence of a valid contract requiring mediation before litigation. Additionally, there is evidence in the record to support the contention that mediation occurred after litigation commenced, in violation of the Company Agreement. However, fact issues remain as to the remaining elements of Lynass's breach claim, namely, Lynass's performance of his obligations under the Company Agreement and

his damages. *See* Dkt. 18, at 23 (AFS's breach of contract claim related to the company agreement).

Lynass has not proven that he performed under the company agreement. Further, it is well established that "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform," and its failure to perform cannot be considered a termination or breach of the contract. *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994); *Jack v. State*, 694 S.W.2d 391, 398-99 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). Lynass has failed to demonstrate that Ray's alleged breach of the Company Agreement—by not mediating before filing suit—is not excused by his own breach of the Company Agreement by withholding access to AFS's domain name, as alleged by Ray.

Additionally, as to damages, Lynass claims he was "damaged by the failure to mediate by incurring unnecessary attorney's fees and court costs." Dkt. 30, at 45. However, Lynass does not point to evidence in the record of his damages. Relatedly, Lynass presumes that proper and timely mediation would have resulted in settlement, negating the alleged attorney's fees and court costs, yet Lynass presents no evidence that mediation would have produced settlement justifying his damages claim. On this record, the Court agrees with those courts holding that a failure-to-mediate claim generally fails to show damages caused as a result of the breach. *See, e.g.*, *Ervin v. Nashville Peace and Justice Ctr.*, 673 F. Supp. 2d 592, 612-13 (M.D. Tenn. 2009); *Solomon v. Progressive Cas. Ins. Co.*, 685 A.2d 1073, 1074-75 (R.I. 1996)

(holding that party may not sustain a cause of action for compensatory or punitive damages arising out of failure to mediate or arbitrate); *Jones v. Garber*, No. CL99-11895, 2000 WL 33259916, at *3 (Va. Cir. Ct. Apr. 21, 2000) ("Although the contract in this case does require mediation before litigation, there is no true remedy for a failure to mediate."); *see also DKH Homes, LP v. Kilgo*, No. 03-10-656-CV, 2011 WL 1811435, at *4 (Tex. App.—Austin May 11, 2011, no pet.) ("That the parties would have reached an agreement is mediation is pure speculation, and any testimony to the effect that the failure to mediate necessarily caused [Plaintiff] to incur attorney's fees for filing suit is too speculative to constitute relevant or probative evidence.").

Accordingly, to the extent Lynass's breach of contract claim is based on the mediation clause of the company Agreement, the Court denies Lynass's motion.

### 2.    Count 2 (Against Ray): Breach of Fiduciary Duty

Lynass brings a counterclaim for breach of fiduciary duty against Ray "derivatively on behalf of AFS" for Ray's "without cause" termination of Lynass. Dkt. 30, at 42. Lynass claims that "Ray knew that if terminated, [Lynass] would have no choice but to compete [with AFS] to retain UCLA Health as his client and to stop subcontracting and diverting contracts to AFS which he had previously done for AFS's benefit." *Id.* at 43. He claims AFS was "harmed by this action because, as a direct result of Ray's actions [in terminating him], AFS lost UCLA Health as a customer and estimated income in the amount of $300,000 per year." *Id.* Lynass claims that AFS has sustained further damages in the form of increased wages paid to his replacement at AFS which would not have had to be paid had Ray not

26

terminated him. *Id.* Lynass's breach of formal fiduciary duty also stems from Ray's alleged failure "to respond to [Lynass]'s demand for books and records"; causing AFS to breach a contract with PaceSetters; and preventing distributions. *Id.* at 43-44. Lynass contends that all of these actions on Ray's part have caused AFS damages in the form of legal fees both to bring suit against Lynass and in AFS's defense of Lynass's counterclaims. *Id.* at 43. To prove a breach of fiduciary duty, Lynass must show (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach results in injury to the plaintiff or benefit to the defendant. *Navigant*, 508 F.3d at 283.

Lynass moves for summary judgment arguing that Ray owed AFS a fiduciary duty, breached this duty by firing Lynass, failing to make distributions, and failing to respond to Lynass's demand for books and records of AFS. Dkt. 47, at 4-5. Lynass states AFS suffered damages in the form of the loss of the UCLA contract and the incursion of attorney's fees. *Id.* In support of his motion for summary judgment as to the breach of fiduciary duty claim, Lynass cites the Company Agreement's statement that "each Manager and Officer shall have a fiduciary duty of loyalty and care." Dkt. 47-1, at 9. Lynass also cites his declaration that his "requests to Plaintiff Ray to see the books and records were met with inexcusable resistance. Instead of providing the books and records within the statutorily required 5 days from the date of the request, AFS and Ray produced only partial books and records." Dkt. 47-2, at 2-3. Lynass also attaches the November 23, 2020, letter explaining the timeline and circumstances of

his termination. Dkt. 47-3, at 2. The letter contains a record of Lynass's demand for inspection of AFS's books and records. *Id.* at 4.

While Lynass has established, and the parties agree, that Ray owes a fiduciary duty to the company, and that AFS lost UCLA Health's account, the undersigned finds that there are fact issues as to Ray's breach and whether the breach caused the damages alleged. There is evidence in the record that Ray responded to Lynass's request for AFS's Books and Records; however, a fact issue remains as to the sufficiency of that response under the Texas Business Organization Code. *See* Dkt. 56-12, at 1; *Gilbreath v. Horan,* No. 01-17-00316-CV, 2023 WL 3011614, at *46 (Tex. App—Houston [1st Dist.] Apr. 20, 2023, pet. denied) (question of sufficiency of Plaintiff's ability to review company records and Defendant's production of records posed to jury after testimony from forensic accountant). Accordingly, the Court denies Lynass's motion for summary judgment as to Ray's breach of fiduciary duty claim.[3]

### 3.    Count 3 (Ray) breach of informal fiduciary duty

Lynass brings a claim for breach of formal fiduciary duty against Ray, arguing that he and Ray knew each other for 15 years prior to the formation of AFS and "had a relationship of trust and confidence." Dkt. 30, at 44. Lynass claims that "[b]ut for their relationship of trust and confidence, he would not have entered into the business venture with Ray." *Id.* Lynass alleges that based on that relationship of trust and confidence, Ray owed him an informal fiduciary duty and "breached that duty when

---

[3] As to Ray's business judgment rule defense and Ray's argument that his claim falls within an exception to the business judgment rule, under the current posture of the motion and timing of these arguments, Ray has not had an opportunity to reply to Lynass's exception argument.

she usurped full control of AFS and terminated [his] employment," and refused to make distributions. *Id.* Lynass claims these breaches cost him his livelihood and caused him mental anguish and stress. *Id.*

As stated above, the elements for breach of fiduciary duty claim in Texas are (1) the existence of a fiduciary relationship between plaintiff and defendant, (2) the defendant's breach of the fiduciary duty it owed plaintiff, and (3) the breach either caused injury to the plaintiff or benefit to the defendant. *Navigant,* 508 F.3d at 283. Texas law recognizes two types of fiduciary duties. *Id.* "The first, a formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Id.* The second is created informally where there is a close personal relationship of trust and confidence. *Willis v. Donnelly,* 199 S.W.3d 262, 277 (Tex. 2006). This second type of fiduciary duty arises from a "moral, social, domestic, or purely personal relationship of trust and confidence." *Meyer v. Cathey,* 167 S.W.3d 327, 331 (Tex. 2005). Texas law does not impose such a relationship lightly, and "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176-77 (Tex. 1997). Further, neither subjective trust alone nor "the fact that the relationship has been a cordial one, of long duration" necessarily transforms a relationship into a fiduciary relationship. *Id.*; *Hoggett v. Brown,* 971 S.W.2d 472, 488 (Tex. App.—Houston 1997, pet. denied). However, whether an informal fiduciary relationship exists is typically

a question of fact. *See, e.g.*, *Kaspar v. Thorne,* 755 S.W.2d 151, 155 (Tex. App.—Dallas 1988, no writ) (citation omitted).

Lynass moves for summary judgment on his informal fiduciary duty claim arguing that his declaration in the record establishes that he and Ray had a preexisting relationship and that this relationship imposed a duty that Ray breached when she failed to make distributions. Dkts. 47 at 6; 47-1, at 4 (Company Agreement language as to distribution duties); 47-2. In his declaration attached to his reply, Lynass states that prior to forming AFS, he and Ray "had known each other for multiple years" through work conferences and that at one point he helped Ray get a job. Dkt. 62-4, at 2.  He also claims that after he and Ray formed AFS, he would stay at Ray's home in Austin and that when they traveled together for AFS business they would stay in one-bedroom Airbnbs to save money. *Id*.

Ray responds that Lynass's reliance on the Company Agreement as evidence of an informal fiduciary duty is misplaced because the Company Agreement "only offers proof that the parties established a formal business relationship, namely AFS." Dkt. 56, at 15. Ray further argues that Lynass's declaration about their relationship does not "offer any proof that Lynass relied on Ray for 'moral, financial, or personal support and guidance.'" *Id*. The undersigned agrees. Lynass has failed to demonstrate that there "exists a long association in a business relationship, as well as personal relationship.'" *See Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Rather, the majority of his summary judgment evidence as to his breach of informal fiduciary claim relates directly to the parties' relationship

in forming AFS and their conduct after forming AFS (e.g., Lynass claims that after the formation of AFS, he would stay in Ray's home when traveling to Austin for work, and that when they traveled together for work, they would stay in the same Airbnb). When AFS-related conduct and agreements are stripped away from the body of Lynass's summary judgment evidence, all that remains is Lynass's statement that he and Ray had known each other for multiple years and that he helped her get a job. Dkt. 62-4, at 2; *see also Associated Indem. Corp. v. CAT Constr.,* 964 S.W.2d 276, 288 (Tex. 1998) (stating agreements are "arms-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary relationship."); *Meyer v. Cathey,* 167 S.W.3d 327, 331 (Tex. 2005).

Lynass's remaining summary judgment evidence falls short of proving that Ray and Lynass had a longstanding personal relationship or that Lynass was justified in relying on Ray to act in his best interest giving rise an informal fiduciary duty. *See Am. Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 339 (Tex. App.—Houston 1991, no pet.) (stating "a fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not, alone, indicate that he placed confidence in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required").

The undersigned finds that Lynass has not met his summary judgment burden of proving each of the elements of his informal fiduciary duty claim. The Court

therefore denies Lynass's motion for summary judgment for breach of informal fiduciary duty.

          4.     Count 7: Declaratory judgment

Lynass moves for summary judgment on his request for declaratory judgment, Dkt. 47, at 7. Specifically, Lynass seeks declaratory judgment that:

> (1) Paragraph VIII.B. of the AFS Company Agreement exempts Defendant Lynass, as PaceSetters, from any prohibition from competition with AFS;
>
> (2) Paragraph VI.C. of the AFS Company Agreement requires distributions to be made on an annual basis of excess cash after accounting for anticipated liabilities and expenses;
>
> (3) UCLA Health System was a client of PaceSetters and Lynass prior to the formation of AFS, and all information regarding UCLA Health System was known to Lynass prior to the formation of AFS; and
>
> (4) there is no agreement or prohibition to prevent Defendant Lynass from competing with AFS when he is no longer an officer, board member, or employee of AFS.

*Id.*

As a threshold matter, the federal Declaratory Judgment Act, which applies here, is merely a procedural device that creates no stand-alone cause of action. *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 602-03 (E.D. Tex. 2021).[4] The viability

---

[4] The federal Declaratory Judgment Act states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Federal courts consequently have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Although 'the district court's discretion is broad, it is not unfettered.'" *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Ins. Co. v. La. Farm Bureau*

of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action. *E.g., Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action ... that is actually litigated in a declaratory judgment action."). This means that, when a party's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well. *See, e.g., Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217-18 (5th Cir. 2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory judgment request.").

Because the Court has declined to grant summary judgment as to the causes of action underlying Lynass's request for declaratory judgment, granting the motion for summary judgment as to Lynass's request for declaratory judgment is premature. *Compare with Payne v. Wells Fargo Bank Nat'l Ass'n*, 637 F. App'x 833, 838 (5th Cir. 2016) (affirming grant of summary judgment on plaintiff's claim for declaratory judgment because district court had properly granted summary judgment on plaintiff's underlying causes of action). The Court denies Lynass's motion for summary judgment as to his declaratory judgment claims.

---

*Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)). "In analyzing whether to decide or dismiss the declaratory judgment suit, ... a federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 26 (5th Cir. 1989)).

## IV.      CONCLUSION

The Court **GRANTS** Lynass's Motion for Summary Judgment, Dkt. 48, as to AFS's ACPA claim and **DENIES** it in all other respects. The Court **DENIES** Lynass's Motion for Partial Summary Judgment, Dkt. 47.

SIGNED November 2, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE